* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On May 17, 1999, defendant-employer employed plaintiff as a truck driver.
3. Plaintiff's average weekly wage was $508.80, yielding a compensation rate of $339.22 per week.
4. Key Risk Insurance Company was the carrier on the risk.
5. Defendants accepted compensability of plaintiff's claim pursuant to a Form 63 dated June 7, 1999. At the time of the Deputy Commissioner's hearing, plaintiff had received compensation benefits at the rate of $339.22 per week, beginning on the date of his accident.
6. Plaintiff's medical records and certain Industrial Commission filings were stipulated into evidence. The Full Commission reopened the record to receive into evidence the initial vocational rehabilitation plan for plaintiff.
7. The issue before the Commission is whether plaintiff is totally and permanently disabled as a result of neck and shoulder injuries sustained in the injury by accident that occurred during the course and scope of his employment on May 17, 1999.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on January 28, 1937, and was 68 years old at the time of the Deputy Commissioner's hearing. Plaintiff was employed as a delivery truck driver for defendant-employer on May 17, 1999 and has not returned to work as a truck driver for defendant-employer or any other employer.
2. On May 17, 1999, plaintiff sustained an admittedly compensable injury by accident in which his left shoulder and neck were injured when a 400-pound pallet fell, hitting his back.
3. Dr. Philips Carter, an orthopedic surgeon with Greensboro Orthopaedic Center, performed two surgical operations on plaintiff's left rotator cuff and also performed two surgical manipulations of the shoulder under anesthesia. On August 3, 2000, Dr. Carter found plaintiff was at maximum medical improvement for his left rotator cuff and gave him a 20% permanent partial disability rating. Dr. Carter noted, "I do not think he can ever go back-to-work with, doing heavy work." On November 20, 2000, Dr. Carter increased plaintiff's rating to 30%. On March 16, 2001, Dr. Carter referred plaintiff to Dr. James E. Nitka, an orthopedic surgeon.
4. Dr. Nitka first saw plaintiff on May 4, 2001. During his treatment of plaintiff, Dr. Nitka performed two operations on plaintiff's neck for left-sided disc herniation at C4-C5 and C5-C6. On September 26, 2002, Dr. Nitka released plaintiff from any further treatment for his neck. However, plaintiff continued to experience difficulties with his left shoulder and obtained approval from the Industrial Commission in an Opinion and Award dated April 29, 2004, for a change of treating physician to Dr. Peter G. Dalldorf and Dr. Henry Elsner.
5. As a further result of plaintiff's compensable injury, Dr. Dalldorf surgically removed plaintiff's rotator cuff in his left shoulder and reattached his biceps tendon to the humerus just below the shoulder joint. As a result of the multiple surgeries to his left shoulder and the loss of his rotator cuff, plaintiff has significant pain and weakness in his left arm and the pain and weakness are greater when he uses his left arm to perform work above waist level.
6. Plaintiff also has a lump in his left shoulder, which Dr. Dalldorf diagnosed as a herniated muscle that is related to his compensable injury, but which is inoperable.
7. On October 27, 2003, Dr. Dalldorf concluded that plaintiff reached maximum medical improvement and that plaintiff would never be able to drive a truck for a living again. Dr. Dalldorf released plaintiff with permanent light-duty work restrictions of no lifting more than ten pounds and no use of the affected left arm above the level of his waist.
8. Plaintiff has had other medical problems unrelated to his compensable injury that have affected his ability to work at various times. On March 17, 2004, Dr. Dalldorf performed a left carpal tunnel release and removed plaintiff from work for a period of four to eight weeks. On July 7, 2005, Dr. Dalldorf performed a right carpal tunnel release and removed plaintiff from any work for a period of at least 30 days. On September 14, 2004, Dr. Robert Evans performed a prostate operation and removed plaintiff from work for eight weeks.
9. Dr. Candace Smith, plaintiff's personal physician, referred plaintiff to UNC Hospitals for a second opinion on the mass in his left shoulder. In 2004 and 2005, plaintiff was seen by a series of physicians, but there was no new diagnosis of the mass and no surgery was recommended.
10. At his deposition, Dr. Dalldorf indicated that he would assign a rating to plaintiff's arm of 40%. Dr. Dalldorf did not believe that plaintiff was totally disabled from work; however, he stated that his opinion was based on plaintiff's physical disability, not on his earning capacity.
11. On February 6, 2004, Amanda Ratliffe, the vocational rehabilitation counselor assigned to plaintiff, arranged for William McClure, a therapist with Hand and Rehabilitation Specialists in Greensboro, to perform a Work Task Analysis on a newly created position at defendant-employer called Assistant Sanitizer. This position consisted of various job duties taken from the existing Sanitizer job. Ms. Ratliff testified that she located two other businesses in Greensboro that did the same type of work as defendant-employer. These businesses had full-time employees who were responsible for cleaning and polishing silverware, pressing linens, and doing other preparation needed before items were rented. Ms. Ratliff, however, did not inquire of these businesses whether the positions involved any lifting.
12. Mr. McClure was asked to perform an analysis to determine whether plaintiff could perform the Assistant Sanitizer job within the work restrictions assigned by Dr. Dalldorf. Mr. McClure testified that Ms. Ratliffe gave him a form dated October 27, 2003, signed by Dr. Dalldorf, which proved to be an incomplete statement of plaintiff's restrictions. The form stated that the work restrictions for plaintiff were "light duty — 10 lb. lift, waist level left arm." Mr. McClure was not given Dr. Dalldorf's more complete clinical note of October 27, 2003, which stated specifically that the work restrictions included "no use of the affected left arm above the level of the waist." Thus, Mr. McClure's Work Task Analysis erroneously concluded that plaintiff could perform the job of Assistant Sanitizer within Dr. Dalldorf's restrictions. Several of the job tasks were clearly described in Mr. McClure's report as being between waist level and shoulder level, such as the use of a linen rack which was 56 inches off the floor, vertical storage drawers which were 4 to 51 inches from the floor, and a hand-wiping station which was 34 to 56 inches from the floor. Mr. McClure stated in his report, "Based on the work tasks identified, all vertical heights reflect to be at or below shoulder level," "Reaching above shoulder level: Infrequent," and "Reaching below shoulder level: Occasional/frequent." Moreover, certain routine tasks normally associated with work done at the facility had been excluded by defendant-employer from the job description of Assistant Sanitizer given to Mr. McClure.
13. Ms. Ratliffe furnished the Work Task Analysis to Dr. Dalldorf, who approved the position for plaintiff on March 10, 2004. Dr. Dalldorf testified at his deposition that if Mr. McClure assumed in his Work Task Analysis that plaintiff could use both arms between his waist and shoulder level, such an assumption was incorrect.
14. Dr. Dalldorf's work restrictions effectively limit plaintiff to a sedentary job. A Functional Capacity Assessment performed by Mr. McClure on July 7, 2004, found that plaintiff could perform work at the sedentary level of exertion and that he could lift ten pounds frequently up to the shoulder level, but with frequent reports of left shoulder and arm pain and fatigue with lifting. When lifting, the tester observed plaintiff's left arm shaking and "cog wheeling." Mr. McClure concluded that plaintiff put forth maximum voluntary effort and that plaintiff could not use his left hand for repetitive hand action requiring a firm grasp. Plaintiff's right and left hand dexterity tested below average and his performance was observed to be slow.
15. Ann T. Neulicht, Ph.D., a vocational rehabilitation counselor, conducted an investigation of plaintiff's capacity to obtain employment in the marketplace. Dr. Neulicht has a doctoral degree in rehabilitation research, is a former assistant professor of rehabilitation counseling at the University of North Carolina at Chapel Hill, is a licensed professional counselor, holds several certificates in the field of rehabilitation, and has significant experience in performing vocational evaluations. She is qualified to give an expert opinion on plaintiff's capacity to earn wages.
16. Dr. Neulicht's opinion was based on plaintiff's age, education, training and other factors. Dr. Neulicht found that plaintiff has a very limited education, having left school at age 16 when he was in the seventh grade. Further, in April 2004, Ms. Ratliffe requested that plaintiff attend Guilford Technical Community College ("GTCC") to obtain his G.E.D. Plaintiff was given placement tests at GTCC in May 2004, which placed him at grade two in reading, at less than grade one in mathematics, and less than grade one in language arts. Dr. Neulicht found that plaintiff is functionally illiterate and has no clerical skills.
17. Plaintiff's prior work experience as a truck driver and as a substation electrician was at the medium level, a degree of exertion that he can no longer perform. The Raleigh Vocational Center tested plaintiff's ability to perform routine repetitive tasks at the sedentary exertion level, within Dr. Dalldorf's restrictions, and specifically with no use of the left arm above waist level. Testing revealed that plaintiff could only work at the low 26th percentile of competitive norms, which is deemed non-competitive according to Dr. Neulicht. In order to achieve that level of performance, it was noted that plaintiff had to take pain medication and the tester observed that due to his pain symptoms, plaintiff was moderately limited in his ability to remember and carry out detailed instructions and to perform at a consistent pace without an unreasonable number of rest periods. Plaintiff could not sustain a production or piece-rate pace of work.
18. Due to the combination of all these factors, Dr. Neulicht was of the opinion, and the Commission finds, that plaintiff is not capable of sustained competitive work in even routine, repetitive, and unskilled occupations.
19. Dr. Neulicht was of the opinion, and the Commission so finds, that the job of Assistant Sanitizer at defendant-employer was a job compiled of sedentary tasks extracted from the normal work routines of jobs that are at the medium exertion level, such as laundry duties and dishwashing, which usually require lifting more than ten pounds, and silver-polishing, which is light in exertion but requires constant use of the hands. There was no credible evidence that such a job, as defined by defendant-employer, exists elsewhere in the competitive job market, since dishwashing jobs require loading, unloading, and lifting dishes; laundry jobs require lifting laundry to and from a washer to a dryer; and silver-polishing jobs require a competitive pace of work performance with dexterity and a firm grasp.
20. Defendant-employer first offered plaintiff the job of Assistant Sanitizer in March 2004, when he was unable to work because of carpal tunnel surgery performed by Dr. Dalldorf. Plaintiff was out of work at the direction of Dr. Dalldorf after March 17, 2004. Defendants terminated the services of Ms. Ratliffe on September 30, 2004, for unstated reasons. On October 1, 2004, defendant-employer mailed plaintiff a letter offering him the Assistant Sanitizer job for the second time; however, plaintiff was unable to work because he was recuperating from prostate surgery performed on September 14, 2004, by Dr. Evans. Plaintiff was out of work at the direction of Dr. Evans for eight weeks. There is no credible evidence that plaintiff actually or constructively refused work that was within the work restrictions imposed by Dr. Dalldorf. No job other than the Assistant Sanitizer position has ever been offered to or made available to plaintiff.
21. Although the job of Assistant Sanitizer was specially designed by defendant-employer for plaintiff, another employee filled the position for defendant-employer after plaintiff turned down the job in March 2004. Thus, the job is not makework. However, the Commission finds that the Assistant Sanitizer position was not within his restrictions and not suitable for plaintiff, and, therefore, his refusal to perform the job was justified.
22. Based upon the greater weight of the evidence, the Commission finds that as the result of the compensable injury by accident, plaintiff is permanently incapable of earning the same or greater wages in the available employment market. Given plaintiff's advanced age, lack of education and limited vocational experience, and considering his physical limitations, plaintiff's pursuit of further employment opportunities or retraining is not a reasonable or viable option.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 17, 1999, plaintiff sustained a compensable injury by accident to his neck and left shoulder in the course and scope of his employment. N.C. Gen. Stat. § 97-2(6). Defendants have paid plaintiff disability and medical compensation since accepting this claim.
2. If an injured employee refuses employment procured for him, which is suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified. Plaintiff's refusal of the Assistant Sanitizer position offered by defendant-employer was justified because the job was not within his restrictions and therefore not suitable employment. N.C. Gen. Stat. § 97-32.
3. The greater weight of the medical evidence indicates that plaintiff is currently unable to work and will continue to be unable to work in the competitive labor market in the future. Vocational rehabilitation professionals have been unsuccessful in any attempt to find suitable work for plaintiff, other than the position offered by defendant-employer which was not within plaintiff's restrictions and therefore not suitable employment. Therefore, in light of his medical restrictions, advanced age, very limited education, and lack of employment experience in clerical or office work, plaintiff has been and remains incapable of earning wages with defendant-employer or in any other employment since May 17, 1999. Ruiz v. Belk Masonry Co.,148 N.C. App. 675, 559 S.E.2d 249, disc. rev. denied, 356 N.C. 166,568 S.E.2d 610 (2002).
4. As a result of plaintiff's May 17, 1999 compensable injury, plaintiff has been unable to work in any employment from May 17, 1999 to the present. Plaintiff is totally and permanently disabled and is entitled to permanent and total disability compensation at the rate of $339.22 per week for the remainder of his life. N.C. Gen. Stat. § 97-29; Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). Defendants have paid total disability compensation to plaintiff since May 17, 1999 and shall continue payment of permanent total disability benefits for plaintiff's lifetime. Id.
5. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§97-19; 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay plaintiff permanent and total disability benefits at the rate of $339.22 per week beginning May 17, 1999 and continuing for plaintiff's lifetime.
2. Defendants shall continue to pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's attorney. Every fourth compensation payment due plaintiff shall be paid directly to plaintiff's counsel as an attorney's fee.
4. Defendants shall pay the costs of this action.
This 8th day of August 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER