631 S.E.2d 547

Ronald Edward MARTIN, Employee, Respondent,

v.

RAPID PLUMBING, Employer, and Builders
Mutual Ins. Co., Carrier, Appellants.

No. 4114.

Court of Appeals of South Carolina.

Heard May 8, 2006.
Decided May 22, 2006.
Rehearing Denied July 6, 2006.

280

282

Richard C. Detwiler and Mikell H. Wyman, both of Columbia, for Appellants.

Stephen B. Samuels, of Lexington, for Respondent.

ANDERSON, J.:

In this workers' compensation case, Rapid Plumbing contends the circuit court erred in (1) affirming the appellate panel's order denying the motion to admit evidence; (2) determining that Ronald Edward Martin was not at maximum medical improvement (MMI); (3) finding Rapid Plumbing improperly terminated temporary total disability benefits; (4) affirming and extending the assessment of penalties; and (5) affirming the commission's determination of the authorized treating physician. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Martin was a plumber's helper who had been employed by Rapid Plumbing for two months when he sustained a back injury while moving a fiberglass bathtub on May 28, 2002. Martin filed for workers' compensation benefits and Rapid Plumbing began providing medical treatment. Because Martin was unable to work, he was paid temporary total disability compensation starting on June 2, 2002.

Martin visited Doctor's Care on June 2, 2002. An MRI showed bulging discs and an annular tear. He received physical therapy, but after three sessions of physical therapy, he had not improved. Martin returned to Doctor's Care on July 24, 2002. The doctor determined physical therapy should be discontinued and referred Martin to an orthopedic surgeon. On August 7, 2002, Dr. William Felmly, an orthopedic surgeon, saw Martin. Martin complained of numbness, weakness, and leg swelling. Dr. Felmly noted, "The left lower extremity shows a bit of weakness in plantar flexion, a little bit of weakness of EHL, half grade on the peroneal.... The patient appears to have increased pain and discomfort on pinch test and rotation." Notwithstanding these findings, Dr. Felmly discharged Martin and returned him to full duty work. The return to work statement was faxed to Rapid Plumbing at Martin's request on August 10, 2002, and Martin returned to work on August 12, 2002.

On the day he returned to work, Martin worked with two plumbers installing bathtubs. He worked one full day cutting pipe, going up and down steps, lifting bathtubs, and unloading a truck. By the end of the day, Martin was "crawling around on [his] knees" and his "legs and back were hurting real bad." The next day, Martin advised Rapid Plumbing of his condition and was told to return to Doctor's Care. When Martin returned to Doctor's Care, they would not see him and the carrier refused to authorize the visit. At his own expense, Martin saw Dr. Donald Johnson at Carolina Spine Institute on September 11, 2002. Dr. Johnson noted an "easy to see" annular tear on Martin's MRI and found his symptoms to be consistent with that injury. Dr. Johnson recommended further treatment, and Martin was taken out of work.

Rapid Plumbing terminated Martin's temporary compensation on August 10, 2002. Rapid Plumbing served a Form 15 on Martin's attorney sometime between August 28, 2002 and September 9, 2002. The Form 15 alleged compensation had been stopped on August 10, 2002 because "claimant has been released to return to work without restrictions and employment has been offered." No supporting documentation was attached. Martin's attorney signed the Form 15 and requested a hearing to determine whether Rapid Plumbing legally terminated temporary compensation.

A single commissioner heard the case on December 19, 2002. During cross-examination of Martin, defense counsel introduced a surveillance videotape taken around December 10, 2002. The videotape showed Martin unloading wood from a pickup truck and using a log splitter to split the wood into firewood. Notwithstanding the video, the single commissioner issued a decision on February 20, 2003 finding Rapid Plumbing had illegally terminated Martin's temporary compensation and Martin was not at MMI. Rapid Plumbing was ordered to reinstate compensation and pay a 25% penalty to Martin. The commissioner designated Dr. Johnson as the authorized treating physician and ordered Rapid Plumbing to provide additional medical treatment as directed by Dr. Johnson.

Rapid Plumbing appealed to the appellate panel of the workers' compensation commission. The appellate panel heard the matter, and on October 29, 2003 one of the commissioner's wrote the parties advising them of the panel's decision. The commission noted it was affirming, but authorized Rapid Plumbing's counsel "to send Dr. Johnson a letter, with the videotape enclosed, simply stating whether or not, based on his viewing of the videotape, he still believes that the Claimant is not at MMI." The letter stated that in the event Dr. Johnson changed his opinion regarding MMI and medical treatment, "it would be appropriate for the Defendants to then file a Form 21, Stop Pay."

On February 23, 2004, Dr. Johnson wrote a letter stating, "After reviewing Mr. Martin's videotape, I do believe that he *is* at maximum medical improvement." Dr. Johnson opined, "I would assign him an eight percent (8%) impairment to the whole person. I would place no particular restrictions on him

at this time." Rapid Plumbing sought to reopen the record and obtain a reversal based on the Johnson letter. The panel heard arguments and concluded Rapid Plumbing had raised no new issues. On June 10, 2004, the appellate panel issued an order affirming in part and reversing in part the single commissioner. The appellate panel reduced the penalty period to August 10, 2002 through December 19, 2002. Rapid Plumbing appealed to the circuit court, which affirmed the appellate panel, but applied the penalty to the period from August 10, 2002 to July 9, 2004—the date when Rapid Plumbing resumed payment of temporary total disability.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the workers' compensation commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981); *Bass v. Isochem*, 365 S.C. 454, 467, 617 S.E.2d 369, 376 (Ct.App.2005); *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 288, 599 S.E.2d 604, 610 (Ct.App.2004). A reviewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Bass v. Kenco Group*, 366 S.C. 450, 457, 622 S.E.2d 577, 580 (Ct.App.2005); *Bursey v. South Carolina Dep't of Health & Envtl. Control*, 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004); S.C.Code Ann. § 1–23–380(A)(6)(e) (2005). Under the scope of review established in the APA, this Court may not substitute its judgment for that of the appellate panel as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund*, 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct.App. 2005); *Frame v. Resort Servs., Inc.*, 357 S.C. 520, 527, 593 S.E.2d 491, 495 (Ct.App.2004); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 337, 478 S.E.2d 74, 76 (Ct.App.1996); S.C.Code Ann. § 1–23–380(A)(6)(d) (2005).

The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Anderson v. Baptist Med. Ctr.*, 343 S.C.

487, 492, 541 S.E.2d 526, 528 (2001); *Hicks v. Piedmont Cold Storage, Inc.*, 335 S.C. 46, 48, 515 S.E.2d 532, 533 (1999); *Frame*, 357 S.C. at 528, 593 S.E.2d at 495. Accordingly, a reviewing court may not substitute its judgment for that of the appellate panel as to the weight of the evidence on questions of fact. *Stephen*, 324 S.C. at 337, 478 S.E.2d at 76. Instead, review of issues of fact is limited to determining whether the findings are supported by substantial evidence in the record. *Hargrove*, 360 S.C. at 289, 599 S.E.2d at 610–11. "On appeal, this court must affirm an award of the Workers' Compensation Commission in which the circuit court concurred if substantial evidence supports the findings." *Solomon v. W.B. Easton, Inc.*, 307 S.C. 518, 520, 415 S.E.2d 841, 843 (Ct.App. 1992). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action." *Howell v. Pacific Columbia Mills*, 291 S.C. 469, 471, 354 S.E.2d 384, 385 (1987).

## *LAW/ANALYSIS*

### I. Failure to Admit Evidence

■ Rapid Plumbing contends the appellate panel erred in failing to admit what it alleges was newly-discovered evidence, specifically the letter of Dr. Johnson dated February 23, 2004. We disagree.

Rapid Plumbing asseverates the Johnson letter should come in pursuant to 25A S.C.Code Ann. Reg. 67–707 (1997) which allows for the admission of newly-discovered evidence. The evidence sought to be admitted does not meet the standard for newly-discovered evidence. Regulation 67–707 (1997) provides that in order to introduce new evidence into the record on a case on review:

C. The moving party must establish that the new evidence is of the same nature and character required for granting a new trial and show: (1) The evidence sought to be introduced is not evidence of a cumulative or impeaching character but would likely have produced a different result had the evidence been procurable at the first hearing; and (2) The evidence was not known to the moving party at the time of the first hearing, by reasonable diligence the new evidence

could not have been secured, and the discovery of the new evidence is being brought to the attention of the Commission immediately upon its discovery.

25A S.C.Code Ann. Reg. 67–707 (1997)

The requirements that the evidence must not be known to the party and could not have been secured by reasonable diligence have not been satisfied. The Johnson letter or its equivalent could have been secured at the first hearing by reasonable diligence. Rapid Plumbing had possession of the tape, yet failed to have a doctor review it. Additionally, Rapid Plumbing did not make a motion to adjourn or leave the record open to develop the evidence.

■ A conflicting doctor's report created after a hearing does not mandate a new trial. *See Ancrum v. Low Country Steaks,* 317 S.C. 188, 193, 452 S.E.2d 609, 612 (Ct.App.1994) (noting that even if physician's reports, indicating that workers' compensation claimant possibly suffered from a herniated disc, were of same nature and character as that required for granting new trial, claimant failed to establish that, by reasonable diligence, such evidence could not have previously been secured and, thus, claimant was not entitled to a new trial based on newly discovered evidence). Rapid Plumbing could have obtained a letter or testimony from Dr. Johnson regarding MMI and provided the evidence at the initial hearing. Because it failed to do so, Rapid Plumbing cannot now argue it deserves a new trial. The appellate panel merely allowed Rapid Plumbing to develop the record for a future Form 21 hearing by permitting it to communicate directly with Dr. Johnson. In no way did the appellate panel state it would allow Rapid Plumbing to admit a letter by Dr. Johnson. Accordingly, the circuit court did not err in finding the Johnson letter should not be admitted.

## II. MMI

■ Rapid Plumbing argues the circuit court erred in finding Martin was not at MMI, when there was no evidence to support that conclusion. We disagree.

■ The appellate panel's factual findings are supported by substantial evidence. "Maximum medical improvement is a

term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct.App.1995). Rapid Plumbing contends the circuit court erred in finding Martin was not at MMI because (1) Dr. Felmly returned Martin to work with no restrictions; (2) Martin returned to work on August 12, 2002; and (3) "the record reflects that the Claimant never presented an out of work excuse from any doctor to the employer or any conflicting doctor's opinions." Rapid Plumbing argues this Court should rely on Dr. Felmly's reports and Dr. Johnson's letter to reverse the appellate panel.

This Court's review is restricted to the evidence considered by the appellate panel in reaching its decision. The Johnson letter was not part of the record before the appellate panel and cannot be used to support Rapid Plumbing's argument. Although the appellate panel could have conceivably found otherwise based on Dr. Felmly's report, it weighed the conflicting opinions of the doctors and gave greater weight to Dr. Johnson's report. Any disagreements in the evidence are to be resolved exclusively by the appellate panel. *See Tiller v. National Health Care Center of Sumter*, 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999) (stating that where there is a conflict in the evidence, either by different witnesses or by the same witness, the appellate panel's findings of fact are conclusive). Dr. Johnson noted an "easy to see" annular tear on Martin's MRI and found his symptoms to be consistent with that injury. Further treatment was recommended and Martin was taken out of work. Dr. Johnson's report, combined with Martin's testimony, is sufficient evidence to affirm the appellate panel's findings.

### III. Termination of Temporary Total Disability Benefits

Rapid Plumbing contends the circuit court erred in affirming the appellate panel's finding that Rapid Plumbing was barred from stopping payment of temporary total disability benefits on the grounds of a perceived deficiency in the Form 15. We disagree.

The reason given on the Form 15 for the termination was because "Claimant has returned to work without restrictions and employment has been offered." However, the statute is explicit that even under a Form 15, an employer can only terminate or suspend temporary compensation if one of the specified conditions is met. The applicable condition in this case allows termination or suspension if "the employee has returned to work; however, if the employee does not remain at work for a minimum of fifteen days, temporary disability payments must be resumed immediately[.]" S.C.Code Ann. § 42–9–260(B)(1) (Supp.2005). Because Martin did not remain at work for fifteen days, Rapid Plumbing was required to resume payments immediately after he left work on August 13, 2002.

The rationale given by Rapid Plumbing is only applicable when suitable employment is offered but not accepted. *See* S.C.Code Ann. § 42–9–190 (1985) ("If an injured employee refuses employment procured for him suitable to his capacity and approved by the Commission he shall not be entitled to any compensation at any time during the continuance of such refusal."). Thus, had Martin refused to return to work, Rapid Plumbing would have had legal justification to terminate his temporary compensation. Because Martin willingly returned to work, but was unable to continue work after one day, the reason given by Rapid Plumbing did not apply.

Even if Rapid Plumbing could have stopped temporary total disability benefits, it failed to follow the proper procedure for doing so as outlined by section 42–9–260 and regulation 67–504. Rapid Plumbing terminated the compensation on August 10, 2002, but failed to file and serve the Form 15 until at least August 28, 2002, and failed to attach the supporting documentation as required by section 42–9–260. These deficiencies are not mere technicalities, but are substantial deviations from the statutory procedure. The circuit court was correct in finding Rapid Plumbing wrongfully terminated temporary benefits.

## IV. Penalty Period

The appellate panel affirmed the single commissioner's imposition of a 25% penalty on Rapid Plumbing on the

overdue payments for temporary total disability benefits. However, the single commissioner set the time for assessment of the penalty starting August 10, 2002 and continuing until Rapid Plumbing resumed paying the benefits—a time which had yet to occur. The appellate panel reversed the commissioner in this aspect by limiting the penalty period to August 10, 2002 through December 19, 2002, the date of the hearing before the single commissioner. The circuit court set the penalty period as August 10, 2002 through July 9, 2004—the date when Rapid Plumbing resumed payment of benefits. Rapid Plumbing contends the court erred in increasing the penalty period. We disagree.

Section 42–9–260(G) of the South Carolina Code (Supp. 2005) requires employers to pay temporary total disability to an employee who has "been out of work due to a reported work related injury" for eight days. The penalty language of section 42–9–260 provides:

> (G) Failure to comply with this section **shall** result in a twenty-five percent penalty imposed upon the carrier or employer computed on the amount of benefits withheld in violation of this section, and the amount of the penalty must be paid to the employee in addition to the amount of benefits withheld. However, the penalty does not apply if the employer or carrier has terminated or suspended benefits when the employee has returned to any employment at the same or similar wage.

*Id.* (emphasis added).

The language of section 42–9–260(G) is mandatory. The statute sets the time of the penalty as beginning with the failure to comply with section 42–9–260 and continuing for as long as the benefits are wrongfully withheld. The appellate panel did not have discretion to limit the duration of the penalty to a time other than the date when payment of benefits was resumed. By the time the circuit court heard the case, the statutory penalty period had ended as Rapid Plumbing had resumed paying benefits to Martin. Therefore, the circuit court correctly set the penalty period as beginning on August 10, 2002 and continuing through the date Rapid Plumbing resumed payments to Martin—i.e., July 9, 2004.

Additionally, Rapid Plumbing complains of the compensation rate upon which the penalty was assessed. However, Rapid Plumbing simply states the compensation rate should have been lower and fails to make an argument explaining its position. "Conclusory arguments constitute an abandonment of the issue on appeal." *Civil Action No.: 2001-CP-32-0711 Carolina Water Serv., Inc. v. Lexington County Joint Mun. Water and Sewer Comm'n,* 367 S.C. 141, 149, 625 S.E.2d 227, 231 (Ct.App.2006); *see also Houck v. State Farm Fire and Cas. Ins. Co.,* 366 S.C. 7, 17 n. 5, 620 S.E.2d 326, 332 n. 5 (2005) (noting an issue is abandoned if the appellant's brief treats it in a conclusory manner). The single commissioner made the finding that the rate should be $230.12, and absent an argument as to why that calculation is wrong, we cannot reverse.

## V. Authorized Treating Physician

Rapid Plumbing argues the circuit court erred in affirming the appellate panel's order that Dr. Johnson be the authorized treating physician. We disagree.

As a preliminary matter, this issue has not been preserved for our review. Rapid Plumbing failed to object and have the issue ruled on by the circuit court and did not file a timely motion for reconsideration. *See Talley v. S.C. Higher Ed. Tuition Grants Committee,* 289 S.C. 483, 487, 347 S.E.2d 99, 101 (1986) (stating an issue raised in trial court but not ruled on by the trial court is not preserved for appellate review).

Even had this issue been preserved for our review, it fails on the merits. Regulation 67–509 states that while a claimant is receiving temporary compensation benefits, "[t]he employer's representative chooses an authorized health care provider and pays for authorized treatment." S.C.Code Ann. Reg. 67–509(A) (1990). However, section 42–15–60 of the Workers' Compensation Act provides:

> Medical ... treatment ... shall be provided by the employer. In case of a controversy arising between employer and employee, the Commission may order such further medical, surgical, hospital or other treatment as may in the discretion of the Commission be necessary.... [T]he employer may, at his own option, continue to furnish or cause to be

furnished, free of charge to the employee, and the employee shall accept an attending physician, unless otherwise ordered by the Commission. . . . The refusal of an employee to accept any medical, hospital, surgical or other treatment when provided by the employer or ordered by the Commission shall bar such employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Commission the circumstances justified the refusal, in which case the Commission may order a change in the medical or hospital service.

S.C.Code Ann. § 42–15–60 (1985); *See also Gattis v. Murrells Inlet VFW # 10420*, 353 S.C. 100, 113–14, 576 S.E.2d 191, 197–98 (Ct.App.2003) (stating that where it deems it necessary, the appellate panel may override an employer's choice of medical provider and may excuse a workers' compensation claimant's justified refusal to seek treatment from employer's provider, in these circumstances, the appellate panel may order a change in the medical or hospital service provided by employer to the claimant).

The appellate panel is afforded discretion to order medical treatment under section 42–15–60 when a controversy such as the one in the instant case arises. The designation of Dr. Johnson was consistent with the factual finding that additional treatment would lessen Martin's disability. The refusal by Doctor's Care to see Martin and Dr. Johnson's subsequent diagnosis created the controversy contemplated by the statute. This is not a case where an employee is refusing treatment offered by an employer. Rather, this is a situation where the employee feels he still needs treatment and the employer fails to provide it. The appellate panel acted within its discretion and the circuit court was correct in affirming the order confirming Dr. Johnson as the authorized treating physician.

## CONCLUSION

The order of the circuit court is

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.