636 S.E.2d 876

**John C. HALL, Claimant Respondent,**

v.

**UNITED RENTALS, INC., Employer and Cambridge Integrated Services, Inc., Carrier, Appellants.**

No. 4166.

Court of Appeals of South Carolina.

Heard Oct. 10, 2006.

Decided Oct. 23, 2006.

---

70

Darryl D. Smalls, of Columbia, for Employer/Carrier/ Appellants.

Thomas W. Greene, of Charleston, for Respondent.

ANDERSON, J.

In this workers' compensation case, the Appellate Panel of the Workers' Compensation Commission found Hall (the claimant) had not reached maximum medical improvement and ordered United/Cambridge (employer/carrier) to pay for additional medical treatment that United/Cambridge did not authorize. The circuit court affirmed and United/Cambridge appealed, contending (1) the Appellate Panel's requiring payment for unauthorized medical treatment violated section 42–15–60 of the South Carolina Code, and (2) the Appellate Panel's finding Hall had not reached MMI was not supported by "reliable, probative, and substantial evidence." We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

John Hall sustained a back injury while working for United Rentals Inc. on October 1, 1999. Hall was treated by Dr. James Aymond who performed a L5–S1 discectomy and a bilateral decompression. Following his back operation Hall began having right leg pain. In April 2000, Hall had addition-

al surgery on his back. Subsequently, he began experiencing swelling and pain in his right knee. He was referred to Dr. John McCrosson, who performed a right total knee arthroplasty in February of 2001. Dr. McCrosson discharged Hall at maximum medical improvement with regard to his knee on June 29, 2001 with 37% impairment to the lower extremity. Additionally, Dr. Aymond observed that Hall had developed depression secondary to his chronic pain and referred him to Dr. Samuel Rosen for psychiatric treatment. United/Cambridge accepted the back injury and provided temporary benefits and medical treatment but denied compensability for the injury to his right leg and depression. In the initial workers' compensation action, the single commissioner found the injury to Hall's right leg and depression were causally related to the work injury. The Appellate Panel adopted the findings of the single commissioner and ordered payment of expenses related to the right leg injury and depression. The circuit court affirmed.

After the two back surgeries, Hall continued to experience back and lower extremity pain. A regimen of physical therapy, epidural steroid injections, and an array of medications, including Oxycontin, Oxycodone, Neurontin, and Bextra, was required to manage Hall's pain. The use of a temporary spinal stimulator reduced the pain in Hall's lower extremities but did not alleviate any of his back pain. In March 2002, Dr. Aymond noted, "unfortunately, Mr. Hall is approaching the end of all possible options with respect to his discogenic pain. In my opinion, he is not a candidate for a lumbar decompression and fusion as he has multiple levels involved." Dr. Aymond indicated Hall would "likely be at maximum medical improvement" at the time of his next visit.

On June 14, 2002, Dr. Aymond opined Hall had reached maximum medical improvement and was not capable of returning to work. Dr. Aymond estimated Hall's impairment to be 14% of the spine. Hall sought a second opinion from Dr. Jeffrey Wingate regarding treatment for his back pain. Based on Dr. Wingate's review of Hall's x-rays, a previous MRI, and new discography studies, Dr. Wingate advised that conservative treatment had failed and suggested surgical intervention. After meeting with Dr. Wingate and discussing options, Hall requested United/Cambridge's authorization for

surgical treatment by Dr. Wingate. United/Cambridge denied Hall's request. Nevertheless, Hall proceeded with the recommended surgery.

In June 2002, Hall underwent a posterior lumbar interbody fusion with instrumentation. Two weeks after surgery, Dr. Wingate reported "John has done well since going home. He has continued decreasing his pain medication and takes a single Lortab less than once every 6–8 hrs." On Hall's July 2002 follow up visit, Dr. Wingate noted, "[f]or the most part his back and legs feel much better." Dr. Wingate indicated Hall was "walking well and [had] return[ed] to a better activity level."

At his five-week follow up visit after surgery, Hall's chief concern was left shoulder pain. Dr. Wingate explained, "[h]e complained about the left shoulder early after surgery. He seems now to be developing a more global problem with it." Later records revealed Hall suffered a left brachial plexus injury which likely resulted from his positioning on the operating table during the back surgery performed by Dr. Wingate. In addition, Hall sustained paralysis of his left hemidiaphram during the surgery. Consequently, Hall consulted additional doctors, including Dr. Wayne Vial and Dr. George Khoury, to treat the diaphragm and shoulder injuries. However, Hall's shoulder pain continued to worsen and he experienced shortness of breath after minimal physical activity.

Notwithstanding the complications, Dr. Wingate's surgery reduced Hall's back and leg pain for a period of time. Three months after the surgery, Dr. Wingate observed, "[Hall's] having about half the level of back pain that he had presurgery. Overall he feels that his relief from the back and leg pain has been significant and worth the effort of going through surgery."

By May 2003, Hall was again reporting back and leg pain and it appeared the pain may be caused by the loosening of screws placed during the spinal surgery. Hall continued having shoulder pain as well, but the pain had decreased from previous reports.

Hall filed a Form 50, seeking workers' compensation coverage for Dr. Wingate's treatment. In addition, he sought payment for the treatment necessitated by the brachial plexo-

pathy and the paralyzed diaphragm. The single commissioner found, "[t]he treatment by Dr. Wingate was necessary and tended to lessen Claimant's disability. No other alternative was offered by the Defendants." The single commissioner concluded:

> The Employer shall pay or cause to be paid all causally related medical treatment from the date of Claimant's accident and continuing. This responsibility includes but is not limited to those providers approved by Commissioner Catoe's Order of October 23, 2001, and shall in addition include the treatment of Doctors Wingate, Vial, and Khoury, and any other physician that has treated or evaluated the Claimant with reference to his back injury and his brachial plexopathy and collapsed diaphragm which resulted from complications from his two level fusion by Dr Wingate.

The Appellate Panel adopted the findings and conclusions of the single commissioner and incorporated the commissioner's order into the final decision. The circuit court affirmed.

## *STANDARD OF REVIEW*

■ The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981); *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 599 S.E.2d 604 (Ct.App.2004). Section 1–23–380(A)(5) instructs that a reviewing court:

> may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion S.C.Code Ann. § 1–23–380(A)(5) (Act No. 387, 2006 S.C. Acts 387, eff. July 1, 2006).

A reviewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Bass v. Kenco Group*, 366 S.C. 450, 457, 622 S.E.2d 577, 580 (Ct.App.2005). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund*, 363 S.C. 612, 611 S.E.2d 297 (Ct.App. 2005).

The substantial evidence rule of the APA governs the standard of review in a Workers' Compensation decision. *Gadson v. Mikasa Corp.*, 368 S.C. 214, 628 S.E.2d 262 (Ct. App.2006); *Frame v. Resort Servs., Inc.*, 357 S.C. 520, 593 S.E.2d 491 (Ct.App.2004); *Corbin v. Kohler Co.*, 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002); *see Lockridge v. Santens of Am., Inc.*, 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001) ("Any review of the commission's factual findings is governed by the substantial evidence standard."). Pursuant to the APA, this court's review is limited to deciding whether the Appellate Panel's decision is unsupported by substantial evidence or is controlled by some error of law. *Rodriguez v. Romero*, 363 S.C. 80, 610 S.E.2d 488 (2005); *Gibson v. Spartanburg Sch. Dist. # 3*, 338 S.C. 510, 526 S.E.2d 725 (Ct.App. 2000); *see Grant v. Grant Textiles*, 361 S.C. 188, 191, 603 S.E.2d 858, 859 (Ct.App.2004) ("A reviewing court will not overturn a decision by the Workers' Compensation Commission unless the determination is unsupported by substantial evidence or is affected by an error of law.").

The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 541 S.E.2d 526 (2001); *Hicks v. Piedmont Cold Storage, Inc.*, 335 S.C. 46, 515 S.E.2d 532 (1999); *Gadson*, 368 S.C. at 222, 628 S.E.2d at 266. It is not within our province to

reverse findings of the Appellate Panel which are supported by substantial evidence. *Id.; Broughton v. South of the Border,* 336 S.C. 488, 520 S.E.2d 634 (Ct.App.1999). Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Pratt v. Morris Roofing, Inc.,* 357 S.C. 619, 594 S.E.2d 272 (2004); *Jones v. Georgia–Pacific Corp.,* 355 S.C. 413, 586 S.E.2d 111 (2003).

The Appellate Panel is the ultimate fact finder in Workers' Compensation cases and is not bound by the single commissioner's findings of fact. *Bass v. Isochem,* 365 S.C. 454, 617 S.E.2d 369 (Ct.App.2005); *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel. *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000); *Frame,* 357 S.C. at 528, 593 S.E.2d at 495. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 519 S.E.2d 102 (1999); *Smith v. NCCI Inc.,* 369 S.C. 236, 631 S.E.2d 268 (Ct.App.2006); *DuRant v. S.C. Dept. of Health & Envtl. Control,* 361 S.C. 416, 604 S.E.2d 704 (Ct.App.2004). Where there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive. *Brown v. Greenwood Mills, Inc.,* 366 S.C. 379, 622 S.E.2d 546 (Ct.App. 2005); *Etheredge v. Monsanto Co.,* 349 S.C. 451, 562 S.E.2d 679 (Ct.App.2002); *see also Mullinax v. Winn–Dixie Stores, Inc.,* 318 S.C. 431, 435, 458 S.E.2d 76, 78 (Ct.App.1995) ("Where the medical evidence conflicts, the findings of fact of the Commission are conclusive.").

## *LAW/ANALYSIS*

### I. Medical Treatment

**A. Appellate Panel's discretion to prescribe additional medical treatment tending to lessen the period of disability.**

United/Cambridge argues the Appellate Panel's order requiring United/Cambridge to pay for additional medical

treatment by Drs. Wingate, Vial, Khoury, and any other physician with reference to Hall's back injury violates section 42–15–60 of the South Carolina Code. Specifically, United/Cambridge maintains Hall was required to receive only medical treatment prescribed by the authorized physician, Dr. Aymond. We disagree.

In this state, "[t]he construction of a statute by the agency charged with its administration should be accorded great deference and will not be overruled without a compelling reason." *Risinger v. Knight Textiles,* 353 S.C. 69, 72, 577 S.E.2d 222, 224 (Ct.App.2002) (*quoting Vulcan Materials Co. v. Greenville County Bd. of Zoning Appeals,* 342 S.C. 480, 496, 536 S.E.2d 892, 900 (Ct.App.2000)). "[T]he cardinal rule of statutory construction is that the court must ascertain and effectuate the intent of the legislature and in interpreting a statute, the court must give the words their plain and ordinary meaning without resorting to a tortured construction which limits or expands the statute's operation." *Gattis v. Murrells Inlet VFW # 10420,* 353 S.C. 100, 113, 576 S.E.2d 191, 198 (Ct.App.2003) (*quoting State v. Dickinson,* 339 S.C. 194, 199, 528 S.E.2d 675, 677 (Ct.App.2000)). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *Id., (quoting TNS Mills, Inc. v. S.C. Dept. of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998)).

The Workers' Compensation Act does not limit the Appellate Panel's ability to order a change in medical care provided to a claimant when necessary. *See id.* at 114, 576 S.E.2d at 198. The Panel is afforded much discretion under Section 42–15–60. *Id.* Section 42–15–60 provides:

Medical, surgical, hospital and other treatment, including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from the date of an injury to effect a cure or give relief *and for such additional time as in the judgment of the Commission will tend to lessen the period of disability* and, in addition thereto, such original artificial members as may be reasonably necessary at the end of the healing period shall be provided by the employer. *In case of a controversy arising between employer and employee, the Commission may or-*

*der such further medical, surgical, hospital or other treatment as may in the discretion of the Commission be necessary.* During the whole or any part of the remainder of disability resulting from the injury the employer may, at his own option, continue to furnish or cause to be furnished, free of charge to the employee, *and the employee shall accept an attending physician, unless otherwise ordered by the Commission and, in addition, such surgical and hospital service and supplies as may be deemed necessary by such attending physician or the Commission.* The refusal of an employee to accept any medical, hospital, surgical or other treatment when provided by the employer or ordered by the Commission shall bar such employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Commission the circumstances justified the refusal, in which case the Commission may order a change in the medical or hospital service.

S.C.Code Ann. § 42–15–60 (Supp.2005) (emphasis added).

 South Carolina has a rich jurisprudential history in the area of medical care. The medical benefits provision of the Workers' Compensation Act allows the Appellate Panel to award medical benefits beyond ten weeks from the date of injury only where it determines such medical treatment would tend to lessen the period of disability. *Dykes v. Daniel Const. Co.,* 262 S.C. 98, 202 S.E.2d 646 (1974); *Williams v. Boyle Const. Co.,* 252 S.C. 387, 166 S.E.2d 550 (1969); *Dodge v. Bruccoli, Clark, Layman, Inc.,* 334 S.C. 574, 514 S.E.2d 593 (Ct.App.1999). Generally, even though a claimant has reached maximum medical improvement (MMI), if additional medical care or treatment would "tend to lessen the period of disability," then the Appellate Panel may be warranted in requiring such treatment to at least maintain the claimant's degree of physical impairment. *Lee v. Harborside Cafe,* 350 S.C. 74, 81, 564 S.E.2d 354, 358 (Ct.App.2002). "However, the fact a claimant has reached maximum medical improvement does not preclude a finding the claimant may still require additional medical care or treatment." *Dodge,* 334 S.C. at 581, 514 S.E.2d at 596. Therefore, "an employer may be liable for a claimant's future medical treatment if it tends to lessen the claimant's period of disability despite the fact the claimant has

returned to work and has reached [MMI]." *Lee,* 350 S.C. at 81, 564 S.E.2d at 358 (*quoting Dodge,* 334 S.C. at 583, 514 S.E.2d at 598). Concomitantly, a finding of MMI does not necessarily establish that the claimant is no longer disabled; unless the Appellate Panel finds disability has ended, it is presumed to continue. *See Swinton v. S.C. Dep't of Mental Health,* 314 S.C. 202, 203–04, 442 S.E.2d 215, 216 (Ct.App.1994) ("The single commissioner's finding of maximum medical improvement did not establish that [the claimant] was no longer disabled as of May 21, 1990. Without such a finding, [the claimant's] disability was presumed to continue."); *see also O'Banner v. Westinghouse, Elec. Corp.,* 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct.App.1995) (renewing prescriptions for pain killer was not inconsistent with finding MMI; rather physician's report concluding employee had reached MMI, coupled with continuation of prescriptive medicines constituted substantial evidence from which Appellate Panel could conclude medication helped alleviate employee's remaining symptoms, but medical condition would not improve); *Scruggs v. Tuscarora Yarns, Inc.,* 294 S.C. 47, 50, 362 S.E.2d 319, 321 (Ct.App. 1987) (finding substantial medical evidence existed that claimant, who was still undergoing physical therapy, had reached MMI with respect to her back injury);

In the seminal case of *Dodge v. Bruccoli, Clark, Layman, Inc.,* the circuit court held the Appellate Panel erred as a matter of law in concluding Bruccoli was no longer required to pay Dodge's medical benefits because he had reached MMI. 334 S.C. 574, 514 S.E.2d 593 (Ct.App.1999). Citing section 42–15–60, this court agreed, instructing that "[t]his section clearly 'allows the [Appellate Panel] to award medical benefits beyond 10 weeks from the date of injury only where the [Panel] determines such medical treatment would tend to lessen the period of disability.'" *Id.* at 580, 514 S.E.2d at 596 (*quoting Sanders v. Litchfield Country Club,* 297 S.C. 339, 344, 377 S.E.2d 111, 114 (Ct.App.1989)). Dodge's physician opined he required continued medication and treatment to maintain his level of functioning. On remand from the circuit court "[t]he [Appellate Panel] awarded Dodge further medical treatment and medication which would prevent his partially disabling

condition from becoming incapacitating and lessen the ultimate period of disability." *Id.* at 578, 514 S.E.2d at 595.[1]

Subsequently, in *Adkins v. Georgia–Pacific Corp.*, the Appellate Panel concluded a worker who suffered a weakening of the tympanic membrane, but had reached MMI with no permanent disability, was nevertheless entitled to ongoing medical benefits. 350 S.C. 34, 564 S.E.2d 339 (Ct.App.2002). Adkins needed continued medical treatment for chronic ear infections which her physician opined could be controlled by medication. The treatment eliminated Adkin's nausea and dizziness, allowing her to work at her normal occupation without interruption. The court of appeals reversed the circuit court's ruling that Adkins was not entitled to future medical benefits, concluding:

> [o]nce it is determined the claimant suffered a compensable injury, South Carolina law provides future medical costs can be awarded if the [Appellate Panel] determines the award will tend to lessen the time during which the claimant is unable to earn, in the same or other employment, the wages he or she received at the time of the injury.

*Id.* at 37, 564 S.E.2d at 340. Relying on section 42–15–60, this court decided the evidence supported the Appellate Panel's finding that, even though Adkins was not disabled, future medical treatment would tend to lessen her period of disability by keeping her from becoming disabled. *Id.* at 38, 564 S.E.2d at 341.

In the case of a permanently disabled claimant, the legislature anticipated the need for continuing medical care and treatment throughout the claimant's lifetime. When "total and permanent disability results, reasonable and necessary ... treatment or care shall be paid during the life of the injured employee...." S.C.Code Ann. § 42–15–60 (Supp. 2005). Accordingly, though a claimant may remain permanently disabled, "further medical treatment may improve [the claimant's] quality of life and ability to cope without improving the overall disability rating." *Pearson v. JPS Converter &*

---

1. Bruccoli appealed the Appellate Panel's ruling on remand. This court then remanded the Appellate Panel's ruling for the purposes of determining whether continued medical care after MMI would lessen Dodge's period of disability.

*Indus. Corp.,* 327 S.C. 393, 399, 489 S.E.2d 219, 222 (Ct.App. 1997).

In the case *sub judice,* Hall sought treatment from United/Cambridge's authorized provider, Dr. Aymond. However, Dr. Aymond opined further surgical treatment was not advisable. Hall remained in pain and sought a second opinion. Upon receiving the opinion of Dr. Wingate indicating further surgical intervention may be helpful, Hall specifically requested authorization for the suggested treatment. In addition, Hall testified that if United/Cambridge had, instead, referred him to another doctor for an opinion or treatment, he would have complied with that referral. United/Cambridge nevertheless denied Hall's request. Apodictically, as in *Dodge* and *Adkins,* the Appellate Panel had the discretion to authorize additional medical treatment that would tend to lessen Hall's period of disability.

The evidentiary record fully supports the Appellate Panel's finding that the treatment by Dr. Wingate was necessary and beneficial. The pain in Hall's back and lower extremities continued to worsen after the two surgeries performed by Dr. Aymond. The surgery by Dr. Wingate lessened this pain significantly for nine months or more. Unfortunately, while in surgery, Hall suffered complications necessitating additional medical treatment. Yet the main purpose of the surgery, to relieve the back pain, was successful. Hall testified, "I do not have the degree of pain that I had before I had the fusion.... I, in fact, can say I felt overall better." Dr. Wingate's medical reports indicate that shortly after surgery Hall experienced increasing relief from back pain and improved mobility. At just over three months after the operation, Hall reported significant relief, having about half the level of back and leg pain he had prior to surgery. Nine months after surgery, Hall's back and hip pain was no longer the severe pain he had before surgery. Conclusively, the Appellate Panel's decision to require additional medical treatment that tended to lessen Hall's period of disability and provided some relief for his intractable pain is in accord with the discretion authorized in section 42–15–60. Though Hall remained essentially disabled, the additional treatment improved his overall quality of life and ability to cope.

## B. Appellate Panel's discretion to authorize medical providers.

 United/Cambridge contends the Appellate Panel erred in requiring payment to unauthorized physicians because section 42–15–60 obligated Hall to accept treatment only from an authorized treating physician. We disagree.

 The Worker's Compensation Act provides that the employer names the authorized treating physician once a case has been accepted. S.C.Code Ann. Regs. 67–509 (1976) ("The employer's representative chooses an authorized health care provider and pays for authorized treatment."); *Clark v. Aiken County Gov't*, 366 S.C. 102, 620 S.E.2d 99 (Ct.App.2005). Generally, a claimant may obtain compensation only by accepting services from the employer's choice of providers. *Id.* However, a claimant is not required to sacrifice much-needed treatment merely to comply with an employer's choice of physicians. *See Risinger v. Knight Textiles*, 353 S.C. 69, 73, 577 S.E.2d 222, 224–25 (2002) (holding "the language of S.C.Code Ann. § 42–15–60 does not allow an employer to dictate the medical treatment of injured employees.").

 The Appellate Panel, when necessary, may override the employer's choice of providers and order a change in the medical or hospital service provided. *Gattis v. Murrells Inlet VFW # 10420*, 353 S.C. 100, 576 S.E.2d 191, (Ct.App. 2003). Ultimately, the Appellate Panel is authorized and empowered to order further medical care and payment for that medical care when controversies arise between a claimant and the employer. *Clark*, 366 S.C. at 112, 620 S.E.2d at 104–05; *Gattis*, 353 S.C. at 111, 576 S.E.2d at 196–97. The controlling language in section 42–15–60 provides:

> [i]n case of a controversy arising between employer and employee, *the Commission may order such further medical, surgical, hospital or other treatment as may in the discretion of the Commission be necessary* . . . and *the employee shall accept an attending physician, unless otherwise ordered by the Commission* and, in addition, such surgical and hospital service and supplies as may be deemed necessary by such attending physician or the Commission.

S.C.Code Ann. § 42–15–60 (Supp.2005) (emphasis added).

In *Clark*, this court analyzed *Ford v. Allied Chemical Corp.*, 252 S.C. 561, 167 S.E.2d 564 (1969) with regard to this issue.

As explicated in *Clark*, the claimant in *Ford* sustained a neck and head injury. His treating physician determined nothing further could be done to alleviate the claimant's pain and "suggested only that he buy some aspirin and return to work." *Ford*, 252 S.C. at 565, 167 S.E.2d at 566. The claimant's family physician referred him to another orthopedic surgeon who placed claimant in the hospital for further treatment. *Id.* The South Carolina Supreme Court affirmed the Appellate Panel's conclusion the claimant was justified in seeking care from a doctor other than his employer's authorized medical provider and awarded compensation. *Id.* at 567, 167 S.E.2d at 567.

Under similar circumstances in *Clark*, this court reasoned: "Dr. Epstein [the authorized treating physician] indicated Clark was not a suitable candidate for treatment and referred him for pain management." *Clark*, 366 S.C. at 111–112, 620 S.E.2d at 104. That treatment was unsuccessful. *Id.* at 112, 620 S.E.2d at 104. "Because Clark related the continuing symptoms to the treating physicians and was unable to obtain relief, he was justified in seeking treatment elsewhere." *Clark*, 366 S.C. at 114, 620 S.E.2d at 105. We explained:

> Although the more appropriate procedure would have been for Clark to seek an order from the full commission before engaging Dr. Greenberg [unauthorized physician] for treatment and surgery, we find that under *Ford* the full commission was not outside its discretion in ordering the County to pay for the surgery and continuing treatment, once it determined the treatment was medically necessary.

*Id.*

In the present case, Dr. Aymond presented only conservative options to treat Hall's worsening condition, and United/Cambridge did not offer an alternative approach through another physician or allow Hall to seek a second opinion. On the other hand, Dr. Wingate, after conducting additional diagnostic studies, presented Hall with the possibility of relief from his intractable pain. Luculently, as in *Clark* and *Ford*, the Appellate Panel had discretion to authorize medically necessary treatment by Dr. Wingate and to require payment of Hall's treatment and causally related medical expenses.

■ United/Cambridge complains Hall's treatment by Dr. Wingate resulted in new injuries requiring additional medical treatment by Drs. Vial and Khoury. United/Cambridge asserts it should not be responsible for the medical costs associated with those consequential injuries. We disagree.

Section 42–15–70 of the South Carolina Code addresses the liability of the employer for medical treatment of injuries resulting from medical treatment of the work-related injury. Specifically, the statute states:

> the employer shall not be liable in damages for malpractice by a physician or surgeon furnished by him pursuant to the provisions of this section, but *the consequences of any such malpractice shall be deemed part of the injury resulting from the accident and shall be compensated for as such.*[2]

S.C.Code Ann. § 42–15–70 (Supp.2005) (emphasis added); *see Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 436, 458 S.E.2d 76, 79 (Ct.App.1995) (*citing Whitfield v. Daniel Constr. Co.*, 226 S.C. 37, 41, 83 S.E.2d 460, 462 (1954) for the proposition that new injuries resulting indirectly from treatment for the original injury are compensable).

Dr. Wingate's medical records show Hall sustained brachial plexopathy and paralysis of the left diaphragm that "most probably" resulted from positioning on the operating table during surgery. Drs. Vial and Khoury concurred with Dr. Wingate's assessment. Consequently, Hall's new injuries are deemed part of the injury resulting from the original accident and are, therefore, compensable by United/Cambridge.

## II. MMI

United/Cambridge avers the circuit court erred when it affirmed the Appellate Panel's finding Hall had not reached MMI. United/Cambridge urges no "reliable, probative, and substantial evidence" existed to support the Appellate Panel's conclusion. We disagree.

_____

2. There is no mention in the record of a malpractice claim, nor does this court address the viability of such a claim. We cite S.C.Code Ann. § 42–15–70 solely to illustrate the legislature's intention that injuries resulting from medical treatment of a work-related injury are to be compensated as such.

■■■■ MMI is a term used to indicate that a person has reached such a plateau that, in the physician's opinion, no further medical care or treatment will lessen the period of impairment. *Bass v. Kenco Group,* 366 S.C. 450, 622 S.E.2d 577 (Ct.App.2005); *Lee v. Harborside Cafe,* 350 S.C. 74, 564 S.E.2d 354 (Ct.App.2002). "MMI is a factual determination left to the discretion of the [Appellate] [P]anel." *Gadson v. Mikasa Corp.,* 368 S.C. 214, 224, 628 S.E.2d 262, 268 (Ct.App. 2006). "It is not within our province to reverse findings of the [A]ppellate [P]anel which are supported by substantial evidence." *Bass,* 366 S.C. at 458–59, 622 S.E.2d at 581. "Any disagreements in the evidence are to be resolved exclusively by the Appellate Panel." *Martin v. Rapid Plumbing,* 369 S.C. 278, 278, 631 S.E.2d 547, 553 (Ct.App.2006) (*citing Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999) (instructing that the Appellate Panel's findings of fact are conclusive as to conflicting evidence, whether from different witnesses or from the same witness,)); *Nettles v. Spartanburg School Dist. # 7,* 341 S.C. 580, 535 S.E.2d 146 (Ct.App.2000). "This court's review is restricted to the evidence considered by the [A]ppellate [P]anel in reaching its decision." *Martin,* 369 S.C. at 278, 631 S.E.2d at 553.

■■■■ Substantial evidence supports the Appellate Panel's finding Hall had not reached MMI. When released by Dr. Aymond, Hall required a complex regimen of narcotic medication and epidural steroid injections to manage his pain. Dr. Wingate prescribed further diagnostic studies, including discography. Based on those results and Dr. Wingate's opinion that conservative treatment had failed, Hall underwent surgery. Approximately two months after surgery Hall was able to discontinue most narcotic pain medication and nearly one year post-operatively Hall's low back and hip pain remained better than before surgery. Dr. Wingate's diagnostic findings, the failure of conservative treatment in relieving Hall's intractable pain, and the significant, albeit temporary, improvement in Hall's back and leg pain is sufficient evidence to affirm the Appellate Panel's finding Hall had not reached MMI.

United/Cambridge claims the Appellate Panel improperly weighed the medical evidence in concluding Hall had not reached MMI. We disagree.

Expert medical testimony is designed to aid the Appellate Panel in coming to the correct conclusion. *Sharpe v. Case Produce, Inc.*, 336 S.C. 154, 519 S.E.2d 102 (1999); *Tiller*, 334 S.C. at 340, 513 S.E.2d at 846; *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 599 S.E.2d 604 (Ct.App.2004). Therefore, the Appellate Panel determines the weight and credit to be given to the expert testimony. *Tiller*, 334 S.C. at 340, 513 S.E.2d at 846; *Hargrove*, 360 S.C. at 293–94, 599 S.E.2d at 613; *Corbin v. Kohler Co.*, 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002). Once admitted, expert testimony is to be considered just like any other testimony. *Tiller*, 334 S.C. at 340, 513 S.E.2d at 846; *Hargrove*, 360 S.C. at 294, 599 S.E.2d at 613; *Corbin*, 351 S.C. at 624, 571 S.E.2d at 98. Although medical testimony is entitled to great respect, the fact finder may disregard it if there is other competent evidence in the record. *Hargrove*, 360 S.C. at 294, 599 S.E.2d at 613; *see Tiller*, 334 S.C. at 340, 513 S.E.2d at 846 (confirming that medical testimony should not be held conclusive irrespective of other evidence).

In the instant case, the Appellate Panel was confronted with conflicting expert evidence. Dr. Aymond declared he believed Hall reached MMI and estimated 14% impairment of Hall's spine. Dr. Wingate, on the other hand, determined further treatment was possible and would alleviate some of Hall's pain and disability. Moreover, after the surgery by Dr. Wingate, Hall's condition improved with regard to his back pain, lower extremity pain, and mobility. Considering the record as a whole, evidence existed which would allow reasonable minds to reach the conclusion the Appellate Panel reached. Accordingly, the Appellate Panel did not improperly determine the weight and credit it assigned the expert evidence in finding Hall had not reached MMI.

## CONCLUSION

We hold section 42–15–60 authorized the Appellate Panel, in its discretion: (1) to order additional medical care that tended to lessen the claimant's period of disability, and (2) to order treatment, when necessary, from medical providers not previously authorized by the employer.

Substantial evidence exists to substantiate that the treatment by Dr. Wingate was necessary and beneficial to lessen Hall's disability and to support the Appellate Panel's determination that Hall had not yet reached MMI at the time of the hearing. In addition, the treatment of the new injuries resulting from the medical treatment of Hall's work-related injury is compensable by United/Cambridge.

Accordingly, the decision is of the circuit court is

**AFFIRMED.**

HUFF, J. and SHORT, J., concur.