655 S.E.2d 482

**Mario B. CURIEL, Respondent,**

v.

**ENVIRONMENTAL MANAGEMENT SERVICES (MS), Employer, Reliance National Insurance Company, and S.C. Property & Casualty Insurance Guaranty Association, Carrier, Appellants.**

**No. 26409.**

Supreme Court of South Carolina.

Heard Oct. 30, 2007.

Decided Dec. 20, 2007.

24

J. Hubert Wood, III, and Jason A. Williams, both of Wood, Porter & Warder, L.L.C., of Charleston, for appellants Environmental Management Services and Reliance National Insurance.

Darryl D. Smalls, of Nelson, Mullins, Riley & Scarborough, L.L.P., of Columbia, for appellant S.C. Property and Casualty Insurance Guaranty Association.

J. Kevin Holmes, of The Steinberg Law Firm, of Charleston, for respondent.

Justice MOORE:

This appeal is from the circuit court's order regarding temporary total workers' compensation benefits and a permanent impairment rating. We affirm in part and reverse in part.

## FACTS

Respondent Curiel (Claimant) filed this claim for workers' compensation benefits after he was struck in the right eye on April 12, 2000, while doing demolition work for his employer, appellant Environmental Management Services (Employer). Claimant suffered a detached retina in his right eye. Employer's compensation carrier, Reliance National Insurance Company, is insolvent, and appellant S.C. Property & Casualty Insurance Guaranty Association (Fund) is responsible for benefits.

The single commissioner found Claimant had a compensable injury to his right eye and awarded permanent benefits based on a 60% loss of use. The commissioner denied temporary total benefits. Claimant, Employer, and Fund all appealed. The Commission's Appellate Panel (hereinafter "the Commission") adopted the findings of the single commissioner but found Claimant suffered only a 41.5% loss of use of his right eye rather than 60%. Again, all parties appealed.

The circuit court found Claimant should have been awarded temporary total benefits, and the award of permanent benefits should have taken into consideration the combined effect of the injury to Claimant's right eye and the pre-existing loss of vision in his left eye. The circuit court remanded to the Commission to determine benefits accordingly. Employer and Fund appeal.

## ISSUES

1. Does federal law preempt entitlement under our Worker's Compensation Act?

2. Is there substantial evidence to support the commissioner's findings regarding maximum medical improvement and temporary total benefits?

3. Did the circuit court err in remanding for the Commission to consider a pre-existing impairment to Claimant's left eye?

4. Is the Fund liable for this claim?

## DISCUSSION

### 1. Preemption under federal law

Claimant is a Mexican national and is admittedly an illegal alien worker. He used fraudulent documents to misrepresent his legal status when applying for the job with Employer in 1997. Under S.C.Code Ann. § 42–1–130 (Supp.2006), for purposes of workers' compensation, "employee" is defined as:

Every person engaged in an employment ... **including aliens** and also including minors, **whether lawfully or unlawfully employed.**

(emphasis added). The single commissioner, the Commission, and the circuit court all found Claimant was entitled to benefits under the Workers' Compensation Act.

■ Employer contends Claimant is not entitled to benefits because federal law preempts state law regarding the payment of benefits to an illegal alien worker. Employer cites the federal Immigration Reform and Control Act of 1986 (IRCA) which prohibits the hiring of unauthorized aliens or the tendering of fraudulent documents to obtain employment. 8 U.S.C. §§ 1324a & c. Although IRCA contains no specific provision forbidding workers' compensation benefits to illegal alien workers, Employer argues that the policy of IRCA prohibiting the hiring of illegal aliens conflicts with, and therefore preempts, state law allowing such payments.

North Carolina, which has the same statutory language as § 42–1–130 regarding alien employees, has addressed this precise issue and ruled that IRCA does not preempt an award of workers' compensation benefits under state law. *Ruiz v. Belk Masonry Co.*, 148 N.C.App. 675, 559 S.E.2d 249 (2002). We find the analysis in *Ruiz* persuasive. The *Ruiz* court noted a Congressional report on IRCA stating "[i]t is not the intention of the Committee that the employer sanctions provisions of [IRCA] be used to undermine or diminish in any way labor protections in existing law...." *Id.* at 678, 559 S.E.2d

249. IRCA does not expressly preclude an illegal alien from being considered an employee for workers' compensation benefits, and *Ruiz* concluded there is no indication preemption was intended. *Id.* Other state courts have ruled the same way. *See, e.g., Safeharbor Employer Servs. I, Inc. v. Cinto Velazquez,* 860 So.2d 984 (Fla.App.2003); *Earth First Grading & Builders Ins. Group/Ass'n Servs., Inc., v. Gutierrez,* 270 Ga.App. 328, 606 S.E.2d 332 (2004); *Design Kitchen and Baths v. Lagos,* 388 Md. 718, 882 A.2d 817 (2005); *Correa v. Waymouth Farms, Inc.,* 664 N.W.2d 324 (Minn.2003).

Further, allowing benefits to injured illegal alien workers does not conflict with the IRCA's policy against hiring them. To the contrary, *disallowing* benefits would mean unscrupulous employers could hire undocumented workers without the burden of insuring them, a consequence that would encourage rather than discourage the hiring of illegal workers.

We find IRCA does not preempt state law and Claimant is not precluded from benefits under our Workers' Compensation Act.

### 2. Maximum medical improvement and temporary total disability

■ Employer contends it was error for the circuit court to reverse the commissioner's findings regarding maximum medical improvement and temporary total benefits. We agree.

The single commissioner found Claimant reached maximum medical improvement on October 3, 2002. This is the date of a letter from one of Claimant's treating physicians, Dr. Farr, indicating Claimant's "eye condition is stable at this point." Dr. Farr treated Claimant's eye pressure which was unacceptably high following the retinal detachment injury. Dr. Farr indicated Claimant's eye pressure was controlled with eye drops; he further noted that Claimant should see a low vision specialist to evaluate him for glasses.

On appeal, the circuit court found Claimant could not have reached maximum medical improvement on October 3, 2002, in light of Dr. Farr's recommendation that Claimant's vision could further improve with low vision care. Further, the court found that even if Claimant reached maximum medical improvement on October 3, 2002, as found by the commissioner, Claimant should have been awarded temporary total benefits

from the date he was terminated until that date. The circuit court remanded for the commissioner to determine the proper award for temporary total benefits.

■■ Essentially, workers' compensation benefits accrue along a time continuum: temporary total disability benefits are available from the date of injury through the date of maximum medical improvement; post-MMI benefits may then be awarded either as a permanent total or partial disability, or as a percentage of impairment to a scheduled member. *Smith v. NCCI, Inc.*, 369 S.C. 236, 631 S.E.2d 268 (Ct.App.2006). Accordingly, the date of maximum medical improvement signals the end of entitlement to temporary total benefits.

■ The term "maximum medical improvement" means a person has reached such a plateau that, in the physician's opinion, no further medical care or treatment will lessen the period of impairment. *Hall v. United Rentals, Inc.*, 371 S.C. 69, 89, 636 S.E.2d 876, 887 (Ct.App.2006); *Lee v. Harborside Café*, 350 S.C. 74, 81, 564 S.E.2d 354, 358 (Ct.App.2002); *Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 581, 514 S.E.2d 593, 596 (Ct.App.1999). Maximum medical improvement is a factual determination by the Commission. *Hall, supra.* Factual determinations by the Commission must be upheld on review unless unsupported by substantial evidence. *Shealy v. Aiken County*, 341 S.C. 448, 454, 535 S.E.2d 438, 442 (2000).

■ Here, the commissioner found Claimant had reached maximum medical improvement based on Dr. Farr's assessment that his eye condition was stable as of October 3, 2002. The fact that Claimant's sight could have been improved with corrective lenses does not impact his impairment rating. Evidence that loss of vision might be reduced by the use of corrective lenses is not to be considered in determining impairment to vision for purposes of workers' compensation benefits. *Dykes v. Daniel Constr. Co.*, 262 S.C. 98, 106, 202 S.E.2d 646, 650 (1974); *see also* S.C. Reg. 67–1105A ("Loss of vision is based on reading without corrective lenses."). The commissioner's finding regarding the date of maximum medical improvement is therefore supported by the record and the circuit court erred in reversing this finding.

■ Further, the circuit court held in the alternative that if Claimant did reach maximum medical improvement on Octo-

ber 3, 2002, he should have received temporary total benefits from the date of his termination until that date.

Claimant was terminated from his job on January 21, 2002, more than two years after his accident. He testified he was fired when Employer learned Claimant's vision was worse than it seemed. Claimant stated that he pretended to see better than he actually could in order to keep his job. Employer's president testified:

> A. [Claimant] was told until he got his vision corrected he couldn't work. He came in the office one day and acted like he was drunk, and I, you know, asked him, and he said he couldn't see. . . .
>
> Q. So he was, I guess—are we saying was he terminated, or is it that if his vision is corrected, he's got a job?
>
> A. Yeah, I wouldn't have any problem hiring him back if his vision is corrected.

Claimant's termination form indicates he would be considered for rehiring but "need[s] to have his eyes fixed before rehire."

The commissioner concluded Claimant was not entitled to temporary total benefits because Claimant had exaggerated the degree of his vision loss. The commissioner found:

> Had the Claimant been honest with his physicians concerning the sight in his right eye, a corrective lens could have been provided, and the Claimant could have worked.

The record supports the commissioner's finding that Claimant's failure to cooperate with his physicians resulted in his uncorrected vision and resulting inability to work. Dr. Farr testified he suspected Claimant was exaggerating his vision loss and that it was difficult to assess Claimant's actual vision. Claimant's vision in his right eye was evaluated by Dr. Morse at 20/80 after the date of maximum medical improvement. Tests performed by Dr. Morse indicated that Claimant's earlier assessment at 20/300 to 20/400 was inaccurate and that Claimant was not fully cooperating in the vision testing. Dr. Farr explained that a patient's vision cannot be corrected without accurate feedback from the patient. This evidence supports the commissioner's conclusion that Claimant's failure to cooperate was the cause of his uncorrected vision.

In conclusion, the commissioner's findings regarding maximum medical improvement and temporary total disability are

supported by the record and should not have been reversed by the circuit court.

### 3.  Pre-existing loss of vision in left eye

■■■ The commissioner concluded Claimant had suffered an impairment of 60% to his right eye. The Commission reduced this award to 41.5% which is the impairment rating for an uncorrected vision of 20/80, the assessment given by Dr. Morse. *See* S.C. Reg. 67–1105C. The circuit court found the Commission should have considered the impaired vision in Claimant's left eye in determining an impairment rating. Employer contends this was error.

Claimant testified that before the injury to his right eye on April 12, 2000, he had a work-related injury to his left eye and he can see only light and dark from that eye. All of the medical evidence corroborates that Claimant has little or no vision in his left eye and there is physical evidence of an old injury to that eye.

Under the Workers' Compensation Act, an injured claimant is entitled to compensation and medical benefits for disability arising from a permanent physical impairment in combination with a pre-existing impairment if the combined effect results in a substantially greater disability. *Ellison v. Frigidaire Home Prods.*, 371 S.C. 159, 638 S.E.2d 664 (2006) (applying S.C.Code Ann. § 42–9–400 (1985 & Supp.2005)). The Commission erred as a matter of law in failing to consider Claimant's pre-existing impairment in his left eye in combination with the injury to his right eye in determining his impairment rating. The circuit court properly reversed and remanded on this issue.

### 5.  Claimant's residency

In addition to the issues raised by Employer, the Fund contends it is not liable for Claimant's claim because Claimant is not a South Carolina resident. Under S.C.Code Ann. § 38–31–20(8) (Supp.2006), the Fund is obligated to cover a claim if "the claimant or insured is a resident of this State at the time of the insured event. . . ."

The Fund contends Claimant does not qualify as a resident because his address on file with Employer is a Salisbury, North Carolina address, and in any event he is not a legal

resident given his status as an illegal alien. Claimant testified he moved to Charleston in 1997 when he began working for Employer and has physically resided there since that time. There is nothing in the record indicating Claimant was actually living in Salisbury at the time of his accident.

Moreover, § 38–31–20(8) provides a claim is covered by the Fund if the claimant *or the insured* is a South Carolina resident.[1] There is no allegation that Employer, who is the insured party, does not qualify as a resident.

## CONCLUSION

We affirm the circuit court's order remanding to the Commission to determine disability based on the combined effect of Claimant's vision impairment in both eyes and reverse the circuit court's order remanding for an award of temporary total benefits. Employer's remaining issue is without merit and we dispose of it pursuant to Rule 220(b), SCACR. *See Cooper v. McDevitt & Street Co.*, 260 S.C. 463, 196 S.E.2d 833 (1973) (false representation regarding an employee's *physical* condition).

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.

---

1. If the insured in not an individual, residence is determined by the location of the principal place of business.