FRANCISCO RUIZ, Employee, Plaintiff-Appellee v. BELK MASONRY COMPANY, INC., Employer, and COMPANION PROPERTY AND CASUALTY, Carrier, Defendant-Appellants

No. COA01-98

(Filed 19 February 2002)

**1. Workers' Compensation— illegal alien—demonstrated earning capacity—eligibility for benefits**

The Industrial Commission did not err by awarding workers' compensation benefits to an illegal alien where plaintiff was employed by defendant prior to his accident and received wages for his work. N.C.G.S. § 97-2(2).

**2. Workers' Compensation— illegal aliens—no conflict with federal law**

The North Carolina workers' compensation statute does not conflict with federal immigration laws in its inclusion of illegal aliens.

**3. Workers' Compensation— attendant care—necessity—sufficiency of findings**

The Industrial Commission did not err by awarding benefits for attendant care in a workers' compensation action. The Commission is the sole judge of the credibility of witnesses and there was competent evidence to support the findings made by the Commission.

**4. Workers' Compensation— attendant care—pre-approval**

The Industrial Commission did not err by awarding attendant care benefits to a workers' compensation plaintiff who was cared for by his brother, despite plaintiff's failure to seek approval of the care before it was performed. N.C.G.S. § 97-90(a) does not require pre-approval of fees charged by health care providers other than physicians, hospitals, or other medical facilities, exceptions which do not apply here.

**5. Workers' Compensation— disability—sufficiency of evidence**

The Industrial Commission did not err by finding a workers' compensation plaintiff permanently and totally disabled where a vocational rehabilitation expert testified that plaintiff could not perform even sedentary work due to his educational deficits; physical limitations including limited use of his left arm and the

inability to walk short distances without help; and impaired concentration, attention, memory, and reasoning.

Appeal by defendants from opinion and award of the North Carolina Industrial Commission filed 13 September 2000. Heard in the Court of Appeals 17 October 2001.

*Mark T. Sumwalt, Vernon Sumwalt, and Stefan R. Latorre, for plaintiff-appellee.*

*Morris York Williams Surles & Barringer, LLP, by G. Lee Martin and Keith B. Nichols, for defendant-appellants.*

McGEE, Judge.

Defendants appeal from the award of workers' compensation benefits to plaintiff Francisco Ruiz. Plaintiff sustained an injury while employed as a construction worker for defendant Belk Masonry Company, Inc. on 7 October 1997. Plaintiff fell approximately seventy feet from a forklift onto a concrete floor and sustained a traumatic brain injury, a kidney contusion, and several fractures. He was transported to Carolinas Medical Center and was hospitalized until 7 November 1997. Plaintiff was then transferred to the Charlotte Institute of Rehabilitation where he received physical, occupational, and speech therapy, along with psychological counseling. Plaintiff was placed in an outpatient program under the care of his brother, Jose Ruiz, on 3 December 1997, and continued to participate in follow-up treatment with his treating physician, Dr. James T. McDeavitt. Dr. McDeavitt testified plaintiff reached maximum medical improvement on 9 February 1998. Dr. McDeavitt also testified plaintiff did not require twenty-four hour attendant care, and that with a vocational rehabilitation plan, plaintiff might be able to return to work.

Plaintiff presented the testimony of a vocational rehabilitation expert and a certified life care planner. The life care planner testified that plaintiff needed twenty-four hour care. Patrick Clifford (Mr. Clifford), a vocational rehabilitation expert, testified that plaintiff could not even perform sedentary work, had limited ability to walk or drive, and had limited cognitive abilities.

Plaintiff was an illegal or undocumented alien at the time of his hiring and at the time of the accident. Plaintiff presented a false social security card and I-9 form to defendant-employer when he was employed.

**RUIZ v. BELK MASONRY CO.**

[148 N.C. App. 675 (2002)]

## I.

**[1]** Defendants first argue the Commission erred in awarding workers' compensation benefits to plaintiff because plaintiff was an illegal alien. We disagree.

Defendants argue the statutory construction of N.C. Gen. Stat. § 97-2(2) does not allow for illegal aliens to be classified as "employees." Defendants further argue plaintiff does not have an earning capacity. However, N.C. Gen. Stat. § 97-2(2) (1999) defines "employee" as "every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also minors, whether lawfully or unlawfully employed[.]" The precise issues defendants raise were determined by our Court in *Rivera v. Trapp*, 135 N.C. App. 296, 519 S.E.2d 777 (1999). *Rivera* presents a similar factual situation to the case before us. In *Rivera*, the plaintiff was employed as a roofer despite his not possessing a green card or a social security number. The plaintiff was seriously injured following a three-story fall from a forklift. Our Court held that N.C.G.S. § 97-2(2)

> defines employee to include "every person engaged in an employment . . . including aliens." The statute makes clear that the General Assembly sought to include individuals like the plaintiff under the protections of the Workers' Compensation Act. Further, plaintiff presented sufficient evidence to show that prior to the injury he did in fact have earning capacity as a roofer.

*Rivera*, 135 N.C. App. at 303, 519 S.E.2d at 781.

N.C.G.S. § 97-2(2) does not preclude plaintiff from receiving workers' compensation benefits based solely on his status as an illegal alien. " 'The philosophy which supports the [Workers'] Compensation Act is that the wear and tear of the workman, as well as the machinery, shall be charged to the industry.' " *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 143-44, 266 S.E.2d 760, 762 (1980) (quoting *Cates v. Construction Co.*, 267 N.C. 560, 563, 148 S.E.2d 604, 607 (1966)). "The primary purpose of legislation of this kind is to compel industry to take care of its own wreckage." *Barber v. Minges*, 223 N.C. 213, 216, 25 S.E.2d 837, 839 (1943). These principles are still relevant today and in the particular situation before us. We agree with the deputy commissioner's finding in this case that we "must also be aware that defendant-employer received the benefits of plaintiff's

labor up to the time of his injury, and it would be repugnant to now deny plaintiff a benefit of the same agreement."

Furthermore, as *Rivera* holds, an illegal alien can, despite his or her status, demonstrate an earning capacity in this state. *Rivera*, 135 N.C. App. at 303, 519 S.E.2d at 781. In the case before us, plaintiff has shown he had the capacity to earn wages as a brick mason prior to his accident. Plaintiff was employed by defendant Belk Masonry Company, Inc. prior to his accident, and he was receiving wages for his work; plaintiff therefore demonstrated an earning capacity.

[2] Defendants next contend that if the North Carolina Workers' Compensation statute is inclusive of illegal aliens and bestows upon illegal aliens an earning capacity, the statute is in conflict with federal immigration laws and is therefore preempted by them. Defendants contend the Federal Immigration Reform Control Act of 1986 (IRCA) preempts illegal aliens from receiving benefits under the North Carolina Workers' Compensation Act. Because federal law prohibits illegal aliens from obtaining employment, defendants contend illegal aliens can never be defined as "employees" under federal or state labor statutes.

Federal law preempts state law in three circumstances: "*First*, where Congress has explicitly provided that state law is pre-empted. *Second*, in the absence of express language, where Congress has intended the federal government should exclusively occupy a particular field. . . . *Third*, [s]tate law is preempted to the extent it actually conflicts with federal law." *Collins v. CSX Transportation*, 114 N.C. App. 14, 18, 441 S.E.2d 150, 152, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 388 (1994) (citations omitted) (emphasis in original).

Defendants have chosen to focus on the third situation and argue there exists a conflict between IRCA and the North Carolina Workers' Compensation Act. We disagree. The U.S. House of Representatives report following the enactment of IRCA expressly explained that

> [i]t is not the intention of the Committee that the employer sanctions provisions of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state labor relations boards, labor standards agencies, or labor arbitrators to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by

existing law. In particular, the employer sanctions provisions are not inten[d]ed to limit in any way the scope of the term "employee" in Section 2(3) of the National Labor Relations Act (NLRA), as amended, or of the rights and protections stated in Sections 7 and 8 of that Act.

H.R. Rep. No. 99-682(I), at 58 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5662. Other state court jurisdictions have held IRCA does not preempt or redefine the term "employee" for purposes of workers' compensation. In *Reinforced Earth Co. v. W.C.A.B.*, 749 A.2d 1036, 1038 (Pa. Commw. 2000), the court held

there is nothing in the IRCA which indicates that an individual, hired by an employer in violation of its provisions, is not an "employee" under federal or state law. As such, the IRCA does not, in and of itself, preclude an illegal alien from being considered an "employee" for purposes of the Act.

*See also Dowling v. Slotnik*, 712 A.2d 396 (Conn. 1998), *cert. denied*, 525 U.S. 1017, 142 L. Ed. 2d 451 (1998); *Mendoza v. Monmouth Recycling Corp.*, 672 A.2d 221 (N.J. 1996) (holding claimant's need for medical treatment and right thereto did not derive from his immigration status but from the service he performed while working for employer).

Based on congressional intent and following the reasoning of other state court jurisdictions, we hold that federal law prohibiting the hiring of illegal aliens does not prevent illegal aliens from being included in the North Carolina Workers' Compensation definition of "employee," nor does federal law prevent illegal aliens, based solely on immigration status, from receiving workers' compensation benefits. We overrule this assignment of error.

II.

[3] Defendants next argue the Commission erred in awarding plaintiff benefits for attendant care. Defendants contend no competent evidence exists to support the findings of fact that in turn would support the Commission's conclusion that plaintiff is entitled to attendant care services at a rate of eight dollars an hour for sixteen hours a day. We disagree.

Whether a plaintiff does or does not receive attendant care benefits is a conclusion of law which must be supported by findings of fact. On an appeal from an opinion and award from the Commission,

the standard of review for this Court "is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000).

Defendants argue the Commission's finding that "[p]laintiff is in need of attendant care and defendants have not provided it" is not supported by competent evidence. "The facts found by the Commission are conclusive upon appeal to this Court when they are supported by competent evidence, even when there is evidence to support contrary findings." *Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *aff'd*, 351 N.C. 42, 519 S.E.2d 524 (1999). Furthermore, the " 'findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)).

The Commission found the following facts in its opinion and award:

9. Mr. Jose Ruiz indicated that plaintiff cannot take care of himself. Mr. Ruiz has to cook, clean, wash, shop, and pay bills, among other things, for plaintiff. He turns on plaintiff's shower and has to assist plaintiff into the shower. Plaintiff can bathe himself while he sits on a stool. Mr. Ruiz indicated that plaintiff cannot cook because he will leave the stove on or forget about the food on the stove. Plaintiff needs assistance walking because he is not stable on his feet and may fall at any time.

10. Mr. Jose Ruiz indicated that he is not able to hold a full time job because it is unsafe to leave plaintiff at home for a long period and he therefore works four or five hours per day, five days a week, and otherwise he is always with plaintiff.

. . .

16. Paula Medina, a registered nurse with a Master's Degree in health administration who also is a certified life planner, drafted a life care plan for plaintiff at the request of Patrick Clifford. As a part of this plan, she indicated that plaintiff would need attendant care for the remainder of his life. Jose Ruiz has been providing care to plaintiff but will be unable to continue if he is not paid.

Defendants argue the testimony of plaintiff's brother and Paula Medina is incompetent, and they offer conflicting evidence to rebut this testimony. Specifically, defendants offer the testimony of plaintiff's treating physician that plaintiff has improved steadily, plaintiff can remain at home unattended, and vocational rehabilitation would be appropriate for plaintiff. Defendants contend this testimony is the only credible testimony concerning plaintiff's health. However, the Commission

> "is the sole judge of the credibility of the witnesses and the weight to be given their testimony." Thus, the Commission may assign more weight and credibility to certain testimony than other. Moreover, if the evidence before the Commission is capable of supporting two contrary findings, the determination of the Commission is conclusive on appeal.

*Dolbow v. Holland Industrial,* 64 N.C. App. 695, 697, 308 S.E.2d 335, 336 (1983), *disc. review denied,* 310 N.C. 308, 312 S.E.2d 651 (1984) (quoting *Anderson v. Construction Co.,* 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). After a careful review of the record before us, we find there is competent evidence to support the findings of fact made by the Commission, and these findings support the Commission's conclusions of law.

[4] Defendants also contend plaintiff is not entitled to attendant care benefits because plaintiff did not seek approval of the care before it was performed. N.C. Gen. Stat. § 97-90(a) (1999) states the charges of

> health care providers for medical compensation under this Article shall be subject to the approval of the Commission; but no physician or hospital or other medical facilities shall be entitled to collect fees from an employer or insurance carrier until he has made the reports required by the Commission in connection with the case.

However, N.C.G.S. § 97-90(a) does not require *pre-approval* of fees charged by health care providers, except for physicians, hospitals, or other medical facilities. Plaintiff's brother does not fit into the exceptions for N.C.G.S. § 97-90(a). This interpretation is consistent with our case law, which has allowed compensation to health care providers similar to plaintiff's brother, without the Commission's pre-approval. *See Godwin v. Swift & Co.,* 270 N.C. 690, 155 S.E.2d 157 (1967) *and London v. Snak Time Catering, Inc.,* 136 N.C. App. 473, 525 S.E.2d 203 (2000). We dismiss this assignment of error.

## III.

**[5]** Defendants next argue the Commission erred in finding that plaintiff is permanently and totally disabled. Defendants contend the Commission erred in finding as fact that as "a result of the October 7, 1997 injury by accident, given plaintiff's vocational skills and physical limitations, plaintiff has been, and remains, incapable of earning wages with defendant-employer or in any other employment since October 8, 1997." Defendants further contend there is evidence in the record which establishes plaintiff is capable of returning to work, and the evidence the Commission relied on is unreliable. However, this Court cannot weigh the evidence in the record. "It is the Commission's role to resolve conflicts in the evidence." *Knight v. Cannon Mills Co.*, 82 N.C. App. 453, 463, 347 S.E.2d 832, 839, *disc. review denied*, 318 N.C. 507, 349 S.E.2d 861 (1986). This Court is limited to reviewing the record for any competent evidence which would support the Commission's findings of fact. *See Pittman*, 132 N.C. App. at 156, 510 S.E.2d at 709.

In the case before us, Mr. Clifford, the vocational rehabilitation expert, testified that plaintiff could not perform even sedentary work due to plaintiff's educational deficits and his physical limitations, including plaintiff's limited use of his left arm and his inability to walk short distances without help. Furthermore, Mr. Clifford testified plaintiff's impaired concentration, attention, memory, and reasoning make it difficult for him to do work. Defendants' argument is based solely on their opinion that Mr. Clifford's testimony is unreliable. However, we find this evidence to be competent and supporting of the Commission's findings of fact. These findings support the Commission's conclusions of law and award for permanent and total disability. We dismiss this assignment of error.

We affirm the award of the Commission.

Affirmed.

Judges TIMMONS-GOODSON and JOHN concur.