**********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ********** RULING ON EVIDENTIARY MATTER
Plaintiff filed a Motion to Amend the transcript to include the affidavit of Mary Marks on April 12, 2006. Defendants filed a Response objecting to the Motion. However, it is noted that the affidavit in question was entered into the record as plaintiff's exhibit 2 as noted on pages 2 *Page 2 
and 3 of the transcript without objection from defendants and is contained on pages 562 through 564 on the transcript of evidence. As such, plaintiff's Motion is rendered Moot.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and the subject matter of this action.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. On or about June 29, 1998, the defendant-employer employed more than three (3) employees, and it and its employees were bound by and subject to the provisions of the North Carolina Workers' Compensation Act, North Carolina General Statute § 97.
4. On or about June 29, 1998 there existed between Karyn Winders and Edgecombe County Home Health Care an employee/employer relationship.
5. On or about June 29, 1998, the employer was insured for workers' compensation with Sedgwick Claims.
6. On or about June 29, 1998, plaintiff was employed by the employer at an average weekly wage $689.50 per the Form 60 provided by defendants.
7. On or about June 29, 1998, plaintiff was diagnosed with an accidental injury to her back arising out of and in the course of her employment with defendant-employer. *Page 3 
8. Plaintiff has been paid temporary total disability compensation of $459.68 since June 30, 1998 and continues to receive compensation at the weekly rate of $459.68.
9. Documents stipulated into evidence include the following:
(a) Stipulated Exhibit #1: Medical records of plaintiff -
 (1) Duke University Medical Center; Durham, North Carolina; three hundred, twenty-four pages of records dated January 13, 1999 through October 20, 2000;
 (2) Richard Osenbach, M.D.; Durham, North Carolina; eighty-two pages of records dated July 26, 2001 through July 30, 2002;
 (3) ProActive Therapy; Rocky Mount, North Carolina; twelve pages of records dated October 21, 1998 through February 1, 2000;
 (4) Donald Serafin, M.D.; Durham, North Carolina; three pages of records dated March 29, 1999;
 (5) Bruce Mathern, M.D., Richmond, Virginia; two pages of records dated June 5, 2001;
 (6) Michael Sunderman, M.D.; Nashville, North Carolina; twenty-nine pages of records dated January 23, 1998 through October 19, 2002;
 (7) Nash Hospitals, Inc.; Rocky Mount, North Carolina; forty-four pages of records dated July 13, 1998 through September 13, 1999; *Page 4 
 (8) Shashidhar Kori, M.D.; Durham, North Carolina; three pages of records dated July 11, 2001;
 (9) Matthews Rehabilitation Services; Rocky Mount, North Carolina; seventeen pages of records dated July 7, 1998 through November 17, 1998;
 (10) Michael Haglund, M.D.; Durham, North Carolina; three pages of medical records dated March 12, 2001;
 (11) Physicians East P.A.-Greenville OB/GYN; Greenville, North Carolina; twenty pages of medical records dated May 7, 1997 through April 24, 2000;
 (12) Nash Orthopaedic Associates, Rocky Mount, North Carolina; five pages of records dated November 10, 2000.
 (b) Stipulated Exhibit #2 — Additional medical records of plaintiff submitted post-hearing (five pages)
 (c) Plaintiff's Exhibits 1 — 7 were stipulated into evidence as follows:
 (1) All North Carolina Industrial Commission Forms and Motions filed in reference to this matter; including Form 18, 33, 33R, 60 and 62;
 (2) Affidavit of Mary Marks
 (3) Employment records of Mary Marks (with chart of wages)
 (4) Employment records of Karyn Winders
 (5) Statement of wages paid to part-time assistant
 (6) Intracorp reports
 (7) Carolina Case Management reports
 ********** *Page 5 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 29 years old at the time of the hearing before the Deputy Commissioner and had worked for defendant-employer as a home health care nurse since July of 1996.
2. On June 29, 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with the defendant-employer when she tried to catch a patient who weighed well over 200 pounds who was falling off the bed. Plaintiff initially received treatment from Dr. Michael Sunderman. She was subsequently referred to and received treatment from Dr. John Gorecki at Duke University Medical Center. Later plaintiff was seen and received treatment at Duke University Medical Center from Dr. Shashidhar Kori, Dr. Richard K. Osenbach, Dr. William T. Hardaker, Dr. Francis J. Keefe, and Dr. Michael Haglund.
3. Immediately after her injury, plaintiff was placed on bed rest and taken out of work by Dr. Sunderman. Dr. Sunderman did not order or even indicate that plaintiff needed home health care assistance at this time. Plaintiff's mother, Ms. Mary Marks, testified that she began providing home health care assistance to plaintiff on July 6, 1998 and continued through the month of July 1998. At his deposition taken nearly 4½ years after he initially treated plaintiff, Dr. Sunderman testified that he believed plaintiff may have needed attendant care after her surgeries, which were performed by Dr. Gorecki, in October 1998 and October 2000 if she had small children at home. However, Dr. Sunderman did not treat plaintiff following her *Page 6 
surgeries and was not aware of what her attendant care requirements would be following her surgeries.
4. Prior to her injury on June 29, 1998 and until approximately November 1999, plaintiff's daughter was in daycare from approximately 8:00 a.m. to 5:00 p.m., Monday through Friday. Plaintiff also had a son who was born on July 13, 2000.
5. On October 7, 1998, Dr. John Gorecki performed an anterior lumbar discectomy and intervertebral body fusion with BAK cage and bone graft harvested from the left iliac crest, L5-S1 level and L4-5. Plaintiff was released from the hospital on October 14, 1998. Although Dr. Gorecki testified in his deposition that it was common to order home care assistance after such a procedure, Dr. Gorecki did not prescribe attendant care for plaintiff after her surgery.
6. Ms. Marks testified that she provided attendant care to plaintiff from October 1998 through December 1998.
7. Plaintiff and Ms. Marks testified that Ms. Marks provided in home health assistance intermittently from March 2000 to August 2000. There is no evidence in the record indicating that a treating physician prescribed such attendant care.
8. Plaintiff underwent a minor surgical procedure with Dr. Gorecki on October 9, 2000 for insertion of a dorsal column stimulator. On November 17, 2000, Dr. Gorecki's nurse, Amanda Rose, wrote a note indicating that it would be helpful for plaintiff to have light help for daily activities such as housecleaning and caring for her children for the next 6 to 8 weeks. However, in his deposition, Dr. Gorecki testified that he would not expect plaintiff to need nursing care assistance with the essential duties of daily living, including childcare, as a result of the procedure, which he characterized as a fairly minor procedure. Furthermore, Dr. Gorecki did not write a prescription for attendant care services following the procedure. *Page 7 
9. From July 6, 1998, when Ms. Marks testified she first began providing attendant care services to plaintiff, to February 2001, no treating physician prescribed attendant care. Furthermore, plaintiff made no request to the Industrial Commission for written authority or approval of fees to be paid to Ms. Marks for her attendant care services.
10. For the first time since plaintiff's injury, by affidavit submitted to the Industrial Commission dated February 7, 2001, Ms. Marks requested reimbursement for attendant care services provided to plaintiff from July 1998 until February 2001 totaling 1,726 hours at a rate of $24.56 per hour which is Ms. Marks' rate of pay as a registered nurse with the Nash County Health Department. In support of the amount of hours she provided attendant care to plaintiff, Ms. Marks attached copies of her timesheets for her job with the Nash County Health Department to show how many hours Ms. Marks cared for plaintiff rather than working.
11. Ms. Marks testified that from the time of plaintiff's injury until the date of the hearing, she provided holistic care to plaintiff. This included assistance with activities of daily living as well as providing physical, psychological, and emotional needs.
12. Ms. Marks testified that she also hired someone to assist plaintiff for several months while Ms. Marks was working. Ms. Marks paid the assistant $858.00.
13. Plaintiff did not seek approval of and payment for the attendant care services provided by Ms. Marks from July 1998 to February 2001 in a timely manner.
14. Beginning in March or April 2001, defendants began providing attendant care for plaintiff for approximately 16 hours per day.
15. Plaintiff began treating with Dr. Richard Osenbach on July 26, 2001 for pain management. On August 27, 2001, several months after defendants began providing attendant care services, Dr. Osenbach performed a procedure to replace the implanted pulse generator for *Page 8 
plaintiff's spinal cord stimulator system. On November 6, 2001, Dr. Osenbach indicated in a letter to the rehabilitation consultant, Carolyn Powell, that he did not think plaintiff's need for home health was a result of the procedure performed on August 27, 2001, which he described as a relatively minor procedure, but rather that she is probably needing help at home because of her ongoing pain problem regarding her lower back. On January 8, 2002, Dr. Osenbach wrote a letter indicating that plaintiff suffers from a chronic intractable pain syndrome that consists of lower back and lower extremity pain, and her pain has been only moderately well-controlled. Dr. Osenbach further testified that he wrote the letter to confirm that plaintiff still required some help for her children, as well as help with her housework.
16. Ms. Pamela Teachey, a rehabilitation consultant for Carolina Case Management, testified that she conducted research in home health care rates for Nash County, plaintiff's county of residence. Ms. Teachey testified that she would categorize the care provided to plaintiff by Ms. Marks as those typically provided by a home health care aide or a personal care aide. Ms. Teachey testified that agencies are charging between $14.00 an hour and $15.50 an hour for a personal care aide. Ms. Teachey's testimony was limited to how much an agency charges to provide home health services. She provided no testimony regarding what a home health aide or personal care aide would actually earn.
 **********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Pursuant to the terms and provisions of N.C. Gen. Stat. § 97-25
"medical compensation shall be provided by the employer." However, before an employer can be required *Page 9 
to provide a service or treatment, a valid prescription or recommendation for the service or treatment has to be made by either a treating physician or agreed to by the employer. In the case at hand, for the period from July 1998 to February 2001 there is no evidence of a prescription or contemporaneous recommendation that attendant care services be provided to plaintiff.
2. It is well settled that the workers' compensation act provides for the payment of attendant care services. In providing payment for attendant care services, the employer's liability is not just to trained professionals, but also to family members who provide necessary attendant care services. Levens v. Guilford County Schools,152 N.C. App. 390, 567 S.E.2d 767 (2002); London v. Snak Time Catering,Inc., 136 N.C. App. 473, 525 S.E.2d 203 (2000). See also, Godwin v.Swift Co., 270 N.C. 690, 155 S.E.2d 157 (1967).
3. Plaintiff is required to obtain prior approval from the Industrial Commission for reimbursement of the attendant care services provided by Ms. Marks.
North Carolina Workers' Compensation Medical Fee Schedule § 14, Special Duty Nursing; Hatchett v. The Hitchcock Corp., 240 N.C. 591,83 S.E.2d 539 (1954); see also Godwin v. Swift Co., 270 N.C. 690,155 S.E.2d 157 (1967). Chapter 14 of the Workers' Compensation Medical Fee Schedule specifically states:
 When deemed urgent and necessary by the attending physician, special duty nurses may be employed. Such necessity must be stated in writing when more than seven days of nursing services have been required.
 . . . Except in unusual cases where the treating physician certifies it is required, fees for practical nursing services by members of the immediate family of the injured will not be approved unless written authority for the rendition of such services for pay is first obtained from the Industrial Commission.
North Carolina Workers' Compensation Medical Fee Schedule § 14, Special Duty Nursing. *Page 10 
This requirement in the Industrial Commission's fee schedule is consistent with the long established rule in North Carolina that practical nursing will not be honored unless written authority is first obtained from the Commission. See Hatchett v. The Hitchcock Corp.,supra. The Commission acknowledges that the "Special Duty Nursing" provision, quoted above, is included in Chapter 14 of the fee schedule, entitled "Hospital Fee Schedule." The Special Duty Nursing provision, however, is not limited to inpatient (i.e., hospital) services. The intent of the provision is to cover all special duty nursing and attendant care, and this is the Commission's standard practice and interpretation. The Commission finds that the last page in the hospital fee chapter contains several miscellaneous provisions, including the Special Duty Nursing and Home Health Agency provisions. The preauthorization requirement is necessary to place the employer/carrier on notice of the employee's need for such services, to cause an investigation as to the extent of the necessary services, if any, and to allow the employer to exercise its right to direct the medical care.See N.C. Gen. Stat. § 97-25. The Legislature specifically authorized the Industrial Commission to adopt guidelines for attendant care, and the provisions of Chapter 14 of the Medical Fee Schedule are in accordance with the Legislature's directive. See N.C. Gen. Stat. § 97-25.4(a). The adopted guidelines for attendant care provided in Chapter 14 of the Medical Fee Schedule are consistent with prior appellate decisions condoning the Commission's policy of pre-approval for family attendant care. See Godwin v. Swift Co., 270 N.C. 690, 155 S.E.2d 157 (1967);Hatchett v. The Hitchcock Corp., supra.[1] The preauthorization provisions of Chapter *Page 11 
14 of the Medical Fee Guidelines are reasonable and are intended to ensure that injured employees are provided the services and care intended under the Act and that medical costs are reasonably contained. N.C. Gen. Stat. § 97-25.4(a). The request for payment for these services must be made within a reasonable amount of time. See Schofield v. GreatAtlantic Pacific Tea Co., 229 N.C. 582, 264 S.E.2d 56 (1980). It was not until February 2001 that plaintiff first requested approval of and payment to Ms. Marks for services plaintiff contends were attendant care services that Ms. Marks provided to plaintiff beginning in July 1998. This request was not made within a reasonable amount of time and should be denied. N.C. Gen. Stat. § 97-25.4(a); Chapter 14, North Carolina Industrial Commission Medical Fee Schedule. Furthermore, since defendants agreed to and began providing attendant care services in March or April 2001, any request by Ms. Marks for reimbursement for attendant care services provided after March or April 2001 should be denied.
4. Plaintiff's claim for attendant care services by Ms. Marks should be denied. N.C. Gen. Stat. §§ 97-2(19); 97-25, 97-25.4(a).
 **********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for attendant care services by Ms. Mary Marks is DENIED.
2. Each party shall pay its portion of the costs.
 This the 30th day of May 2007. *Page 12 
 S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
[1] The Commission notes that some more recent Court of Appeals decisions have discussed the approval of past attendant care without addressing the Commission's guidelines that are contained in Chapter 14 of the Medical Fee Schedule. See Ruiz v. Belk Masonry Co., Inc.,148 N.C.App. 675, 559 S.E.2d 249 (2002) (finding that pre-approval is not required under § 97-90(a)); London v. Snak Time Catering, Inc.,136 N.C.App. 473, 525 S.E.2d 203 (2000) (approving family attendant care without addressing pre-approval requirements). The Commission suggests that these decisions are not precedent for allowing attendant care without prior Commission approval because the requirements of Chapter 14 of the Medical Fee Schedule were not presented to the Court of Appeals for its consideration in these cases and they were not analyzed in conjunction with the Legislature's directive authorizing the Industrial Commission to develop guidelines for attendant care. See N.C.G.S. §97-25.4(a). Furthermore, the Commission suggests that exceptional circumstances existed in both Ruiz and London such that the Commission awarded compensation for past family attendant care where prior approval had not been requested. In the case at hand, the greater weight does not support a finding of exceptional circumstances to justify an award of compensation. *Page 13