I disagree with the majority's determination that plaintiff is required to obtain prior approval from the Industrial Commission for reimbursement of the attendant care services provided by plaintiff's mother, Ms. Marks.
The majority correctly notes that some recent North Carolina Court of Appeals decisions have discussed pre-approval of attendant care services preformed by family members, including Ruiz v. Belk Masonry Co.,Inc., 148 N.C. App. 675, 559 S.E.2d 249 (2002), and London v. Snak TimeCatering, Inc., 136 N.C. App. 473, 525 S.E.2d 203 (2000), but incorrectly indicated that the Court of Appeals decisions were rendered without addressing or reviewing the Commission's guidelines that are contained in Chapter 14 of the Medical Fee Schedule. The majority stated: "The Commission suggests that these decisions are not precedent for allowing attendant care without prior Commission approval because the requirements of Chapter 14 of the Medical Fee Schedule were not presented to the Court of Appeals for its consideration in these cases." I disagree and firmly believe Ruiz is binding precedent on the issue currently before the Commission.
The Court of Appeals in the Ruiz case was, in fact, presented with the language of Chapter 14 of the Medical Fee Schedule for its consideration. Nevertheless, the Ruiz Court specifically found and concluded:
 Defendants also contend plaintiff is not entitled to attendant care benefits because plaintiff did not seek approval of the care before it was performed. N.C. Gen. Stat. § 97-90(a) (1999) states the charges of `health care providers for medical *Page 14 
compensation under this Article shall be subject to the approval of the Commission; but no physician or hospital or other medical facilities shall be entitled to collect fees from an employer or insurance carrier until he has made the reports required by the Commission in connection with the case.'
 However, N.C.G.S. § 97-90(a) does not require pre-approval of fees charged by health care providers, except for physicians, hospitals, or other medical facilities. Plaintiff's brother does not fit into the exceptions for N.C.G.S. § 97-90(a). This interpretation is consistent with our case law, which has allowed compensation to health care providers similar to plaintiff's brother, without the Commission's pre-approval.
Ruiz, 148 N.C. App. at 681, 559 S.E.2d at 253-54 (citing Godwin v. Swift Co., 270 N.C. 690, 155 S.E.2d 157 (1967), and London,136 N.C. App. 473, 525 S.E.2d 203).
In the defendants' brief to the Ruiz Court, they specifically argued that payment for attendant care services rendered by family members prior to the approval of the Commission should be denied. The defendants based their argument upon the language found in Chapter 14 of the Medical Fee Schedule, which defendants quote as: "[f]ees for practical nursing services by members of the immediate family of the injured will not be approved unless written authority for the rendition of such services for pay is first obtained from the Industrial Commission."Defendants' Appellate Brief to the Court of Appeals at page 19. In plaintiff's brief to the Ruiz Court, the plaintiff responded: "[the d]efendants' only authority for a `pre-approval' requirement is a vestigial statement in the Industrial Commission's Rating Guide. However, the language upon which [the d]efendants rely is found in a chapter dealing with patient care in a hospital. Thus, [the d]efendant[s'] `authority' applies to situations only in which family members are providing skilled nursing services during a hospitalization, not attendant care services provided in the home. The [d]efendants' `authority' does not apply to this case." Plaintiff's Appellate Brief tothe Court of Appeals at pages 33-34. In addition to his argument, plaintiff attached a copy of Chapter 14 of the Medical Fee Schedule as an appendix to his brief. Therefore, the majority *Page 15 
incorrectly states that the requirements of Chapter 14 of the Medical Fee Schedule were not presented to the Court in Ruiz.
The majority relies on the case of Hatchett v. The HitchcockCorp., 240 N.C. 591, 83 S.E.2d 539 (1954), in making its determination that prior approval for attendant care services by family members is required; however, Hatchett is not controlling law on the issue. InHatchett, the Supreme Court of North Carolina denied payment of past family attendant care services provided by the plaintiff's mother because the Commission had not given prior approval for family attendant care services. The Hatchett Court specifically determined that nursing care services required prior approval. In reaching its decision, theHatchett Court relied on N.C. Gen. Stat. § 97-26, and Chapter 14 of the Medical Fee Schedule of the Industrial Commission.
N.C. Gen. Stat. § 97-26, has been amended since the Supreme Court rendered its decision in Hatchett and the language relied upon by theHatchett Court is no longer present. Since the ruling inHatchett, the Commission has also revised the language of Chapter 14 of the Medical Fee Schedule dealing with special duty nursing. The current language allows reimbursement for "practical nursing services" performed by family members without prior approval "in unusual cases where the treating physician certifies it is required." Therefore,Hatchett is not controlling law in the instant case.
I believe plaintiff's mother should be reimbursed for the attendant care services she provided to plaintiff without prior approval during any period for which treating physicians opined that such services were reasonably required. Three doctors have testified that plaintiff needed attendant care for a period of time after surgery. Dr. Michael Sunderman first saw plaintiff on June 30, 1998, and later referred plaintiff to Dr. John Gorecki, who performed plaintiff's first surgery on October 7, 1998, and a second surgery on October 9, 2000. *Page 16 
Dr. Sunderman opined that since plaintiff has young children, she would need attendant care services after her initial back surgery and subsequent surgery in October 2000. Dr. Gorecki opined that he would not expect plaintiff to need nursing care after her October 2000 procedure even with small children. However, on November 17, 2000, he did authorize a note that stated it would be helpful for plaintiff to have light help for house cleaning, caring for her children, bathing, grocery shopping and errands for six to eight weeks. Dr. Gorecki also testified that had plaintiff requested home health assistance and had requested to have her mother provide those services, he would have found this request to be reasonable. Dr. Richard Osenbach, who first saw plaintiff in July 2001, testified that he recommended attendant care services because plaintiff was in pain and needs help around the house.
Plaintiff is requesting reimbursement for attendant care services provided by her mother from July 1998 until February 2001, for a total of 1,726 hours at a rate of $24.56 per hour. Although plaintiff's mother is a nurse, she provided unskilled nursing care to plaintiff. Defendants began providing attendant care services for plaintiff in either March or April 2001, for sixteen hours per day.
I believe the evidence establishes that plaintiff needed attendant care to provide relief and lessen her disability from her injury. I am of the opinion that at least a portion of the 1,726 hours of attendant care provided by plaintiff's mother should be reimbursed. Since plaintiff's mother did not provide skilled nursing care, I am of the opinion that she should be reimbursed at a rate consistent with unskilled care, such as that provided by a home health care aide.
For the reasons stated above, I respectfully dissent from the Opinion and Award by the majority herein.