***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn with modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All the parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. *Page 2 
All parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. The employer-employee relationship existed between the Plaintiff and the defendant-employer at all relevant times herein.
3. Defendant-employer was insured by Federal Insurance Company for workers' compensation purposes, at all times relevant.
4. Plaintiff sustained an admittedly compensable injury by accident on February 15, 2005 while in the course and scope of her employment with defendant-employer. Defendants accepted Plaintiff's claim by filing a Form 60 dated September 14, 2005, indicating that defendants were admitting Plaintiff's right to compenstion for an injury by accident on February 15, 2005 to her left foot.
5. Plaintiff's average weekly wage at the time of her injury by accident was $913.83, yielding a compensation rate of $609.25 per week.
6. Plaintiff has been diagnosed with reflex sympathetic dystrophy or chronic regional pain syndrome as a proximate result of her admittedly compensable injury. Additionally, that Plaintiff is now in need of 24 hour LPN care.
7. Defendants agree that Dr. Pociask is Plaintiff's authorized treating physician and that they will provide Plaintiff with 24 hour LPN care as prescribed by Dr. Pociask on December 23, 2008 until further order of the North Carolina Industrial Commission or until such time as a different level of care is prescribed by an authorized treating physician.
8. The following exhibits were admitted into evidence at the hearing before the deputy commissioner: *Page 3 
 a. Stipulated Exhibit #1; Industrial Commission Forms;
 b. Stipulated Exhibit #2; report dated July 27, 2008 from Corey Staver of David Corey Company, Inc.;
 c. Stipulated Exhibit #3; report dated August 12, 2008 from Barry Kolton of Mobility Consulting Group, LLC;
 d. Stipulated Exhibit #4; medical records;
 e. Stipulated Exhibit #5; Scheme 1 and Scheme 2 prepared by Carlos Moore;
 f. Plaintiff's Exhibit #1; Weiss' CV;
 g. Plaintiff's Exhibit #2; Life Care Plan;
 h. Plaintiff's Exhibit #3; Southeast Pain records;
 i. Plaintiff's Exhibit #4; CNA rates; and,
 j. Plaintiff's Exhibit #5; Letter from Ms. Griffin to Jeff Yuckel;
9. The issues for determination are as follows:
 a. Whether Plaintiff is entitled to past, present and future attendant care services?
 b. Whether Plaintiff is entitled to home modifications as a result of admittedly compensable injury by accident?
 c. Whether Plaintiff is entitled to additional medical care as a result of admittedly compensable injury by accident?
 d. Whether Plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 ***********
The Pre-Trial Agreement along with its attachments and any additional stipulations are hereby incorporated by reference as though they were fully set out herein.
 *********** *Page 4 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDING OF FACT
1. At the time of hearing before the deputy commissioner, Plaintiff was 43 years old, her husband 35 years old, and they resided in Concord, North Carolina with their three children, ages 18, 15 and six.
2. Prior to Plaintiff's injury by accident on February 16, 2005, Plaintiff had been employed with Richard Childress Racing for approximately five years as a product licensing manager. Plaintiff's husband was a general contractor who had been licensed since 2002 but had been in the business of building houses since 1997. He built their marital home.
3. On February 16, 2005, Plaintiff sustained an admittedly compensable injury by accident when she struck her left foot against a desk. She was treated by Cabarrus Urgent Care, Dr. Jack Faircloth of Harrisburg Family Physicians, and Dr. Robert McBride of OrthoCarolina before she was eventually referred to Dr. Derek Frieden of Southeast Pain Care on July 8, 2005 and diagnosed with reflex sympathetic dystrophy or chronic regional pain syndrome.
4. On June 8, 2005, during his visit with Plaintiff, Dr. Frieden noted that Plaintiff claimed she was in need of some assistance in her activities of daily living on a frequent basis.
5. Plaintiff had a series of four L2 paravertebral blocks performed by Dr. Frieden and Dr. Thomas Heil but her condition continued to deteriorate. *Page 5 
6. On August 12, 2005, Dr. Frieden recommended a spinal cord stimulator which was permanently implanted by him on September 6, 2005.
7. On December 29, 2005, Dr. Heil was concerned that Plaintiff's condition would require her leg to be amputated and referred her to Dr. Jeremiah Holleman of the Sanger Clinic for possible surgical sympathectomy for limb salvage. Plaintiff saw Dr. Holleman the following day and surgery was performed by him on February 2, 2006 consisting of a left lumbar sympathectomy.
8. Plaintiff's condition continued to deteriorate and on April 17, 2006, Dr. Heil referred her to Dr. Richard Rauck in Winston-Salem.
9. On May 23, 2006, Dr. Heil recommended and prescribed assistance with activities of daily living as he felt that she could not be left alone. He also noted that Plaintiff was depressed.
10. On July 5, 2006, Plaintiff began treatment with Gene Haas, a psychologist, on referral from Dr. Heil for her psychological condition. Mr. Haas has treated her since that time.
11. On July 17, 2006 and December 27, 2006, Dr. Heil again recommended attendant care services and noted that she could barely use her right hand, was nearly incapacitated, could barely care for herself, and could not perform normal activities of daily living. Dr. Heil also noted that Plaintiff's reflex sympathetic dystrophy had spread from her left lower extremity to her right upper extremity.
12. In January 2007, Jeff Yuckel, Plaintiff's husband, also requested assistance or attendant care services for Plaintiff from Defendant-Employer. Defendants did not honor any of the recommendations made by Plaintiff's authorized treating physicians or Mr. Yuckel regarding attendant care services. *Page 6 
13. In approximately February 2007, defendants hired Armstrong Associates to assess Plaintiff's needs. Armstrong Associates assigned Carol Isenhour, a registered nurse, to perform this assessment. She recommended that Plaintiff receive 40 hours of certified nursing assistant (CNA) care per week from 8:00 a.m. to 4:00 p.m. Monday through Friday.
14. Defendants then hired Home Watch to perform a second assessment. Home Watch estimated that Plaintiff needs assistance for each of her activities for five hours per day. 15. On March 14, 2007, Dr. Heil recommended a second spinal cord stimulator to address the reflex sympathetic dystrophy in Plaintiff's right upper extremity. This surgery was performed on May 22, 2007 by Dr. Stephen Pociask, his medical partner. Because of the type of procedure needed, Dr. Heil transferred Plaintiff's care to Dr. Pociask.
16. On June 1, 2007, Dr. Pociask prescribed an in home "pass thru elevator." He reiterated this request again on November 1, 2007.
17. Dr. Heil opined that Plaintiff's reflex sympathetic dystrophy was one of the worst that he had seen in his career of treating patients, that the compensable work injury led to the development of reflex sympathetic dystrophy in her left lower extremity and that the compensable work injury and the reflex sympathetic dystrophy in her left lower extremity led to the development of the reflex sympathetic dystrophy in her right upper extremity.
18. In order to improve the efficiency of the spinal cord stimulator in her neck, Dr. Pociask referred Plaintiff to Dr. Joe Bernard of Carolina Neurosurgery Spine to implant paddle leads. This procedure was performed on March 4, 2008.
19. At the request of defendants, Plaintiff was evaluated at Shepherd Center in Atlanta, Georgia, a national rehabilitation facility that performs evaluations for home modifications and functional abilities. Defendants informed Plaintiff that if Shepherd Center *Page 7 
recommended home modifications to include an elevator, Defendants would perform this modification along with providing all the other recommendations.
20. Based on Defendants' representation, Plaintiff agreed to be admitted to Shepherd Center from May 12, 2008 to May 17, 2008. Shepherd Center made a number of recommendations for equipment needs and recommended modifications to Plaintiff's home consisting of an elevator to allow her access to her children's bedrooms which they believed essential for her to continue her occupational role of mother.
21. In response to the report from the Shepherd Center dated May 23, 2008, defendants hired Barry Kolton, an engineer in handicap design and reconstruction, who recommended that an elevator be installed in Plaintiff's home.
22. Plaintiff hired Laura Weiss, a certified life care planner, to perform a life care plan. In order to address the issue of home modifications, Ms. Weiss contacted PMSI who contracted with David Corren Staver, an occupational therapist, to perform an assessment. Mr. Staver was of the opinion that home modifications needed to include an elevator to allow Plaintiff to have access to the second floor.
23. Plaintiff and Mr. Yuckel reside in a two-story home where their bedroom and the bedrooms of all three children are on the second floor. Defendants acknowledge that the recommendation from the Shepherd Center, Barry Kolton, and Corey Staver all include installation of an elevator as part of their modification recommendations to allow Plaintiff to remain on the second floor. However, defendants have failed to cause any modifications to be made to Plaintiff's home. *Page 8 
24. On August 4, 2008, Plaintiff moved from her residence to Eden Gardens, an assisted living facility at defendants' request in order to address modifications to Plaintiff's home.
25. In September 2008, defendants hired Carlos Moore to obtain an opinion as to where the elevator could be placed in Plaintiff's home. Mr. Moore provided a recommendation for home modifications that included an elevator. Mr. Moore's recommendation has been approved by the County. Mr. Moore has also submitted pricing for this recommendation.
26. On September 10, 2008, Dr. Pociask prescribed a smaller electric wheelchair in addition to the large wheelchair that Plaintiff currently has. He was also of the opinion that Plaintiff's reflex sympathetic dystrophy had spread to all four extremities.
27. On November 6, 2008, Dr. Pociask again reiterated that Plaintiff's reflex sympathetic dystrophy had spread to all four extremities. Due to her inability to use her extremities, Plaintiff needed 24-hour nursing care.
28. On November 26, 2008, Dr. Pociask prescribed 24-hour bedside nursing care. On December 12, 2008, Dr. Pociask prescribed 24-hour CNA care. On December 23, 2008, Dr. Pociask prescribed 24-hour licensed practical nursing (LPN) care. Defendants have provided 24-hour LPN care since December 23, 2008.
29. The Full Commission finds that based upon the greater weight of the credible evidence that Plaintiff's reflex sympathetic dystrophy in all four extremities proximately resulted from her initial compensable injury on February 16, 2005.
30. Defendants retained Dr. Neal S. Taub for the purpose of an independent medical examination to address Dr. Pociask's prescription for one-on-one bedside nursing services issued on November 26, 2008 and the issue of home modifications. Dr. Taub opined that Plaintiff's *Page 9 
condition was similar to a quadriplegic, that Plaintiff needed LPN care 24 hours per day if she was not sleeping well through the night, and that Eden Gardens was not an appropriate place for her because it could not accommodate the 24-hour LPN care prescribed by Dr. Pociask on December 23, 2008.
31. On December 24, 2008, Plaintiff moved to another facility, Morningside, where Plaintiff still resides.
32. The Full Commission finds based upon the greater weight of the evidence that Plaintiff was in need of attendant care Monday through Friday from a CNA for five hours per day from May 23, 2006 through August 4, 2008 when Plaintiff was moved to Eden Gardens, an assisted living facility, where she remained until December 23, 2008. While at Eden Gardens Plaintiff had access to 24 hour assistance from the facility's CNA's on staff.
33. Defendants provided 25 hours per week of attendant care services from March 12, 2007 to July 23, 2008. Mr. Yuckel and other family members provided the remaining care prior to March 12, 2007 and from July 24, 2008 through August 3, 2008.
34. From 2006 through 2008, the prevailing market rates for CNA attendant care in the community in which Plaintiff resided was between $18.72 per hour and $19.08 per hour. Although Plaintiff's husband, Mr. Yuckel, and other family members have provided care to Plaintiff, Mr. Yuckel and Plaintiff's family members are not certified nursing assistants and are not medically trained. Therefore, they should not receive the same compensation as a CNA. The Full Commission finds that the attendant services provided by Plaintiff's husband has a reasonable value of $13.00 per hour.
35. While Dr. Pociask prescribed for Plaintiff 24-hour nursing care by an LPN, he also testified that Plaintiff's needs could be met by a CNA but for Plaintiff's need for assistance *Page 10 
with her medication and whether a CNA can legally administer medications. Once Plaintiff returns home after modifications, Plaintiff's needs can be met by assistance from a CNA. Plaintiff will be in need of attendant care following completion of the home modifications and her return home.
36. Plaintiff's husband, is familiar with Plaintiff's needs, and Plaintiff desires to have Mr. Yuckel provide this care.
37. The Full Commission finds based upon the greater weight of the evidence that the attendant care recommended by Plaintiff's treating physicians, the recommended home modifications including the elevator, and Dr. Pocisask's recommendation of a second smaller wheelchair are reasonably necessary to effect a cure, provide relief, or lessen Plaintiff's period of disability.
38. Defendants have defended Plaintiff's claim for retroactive attendant care services without reasonable grounds. Despite having actual or constructive knowledge of Plaintiff's need for attendant care services, Defendants failed to provide these services even upon request. Defendants ignored the recommendations of Plaintiff's authorized treating physicians. Even after Defendants retained their own expert to render an opinion regarding Plaintiff's need for attendant care services and their own expert recommended a specific number of hours, defendants ignored the opinion of their own expert and instead hired yet another expert to render an opinion on the issue.
39. Defendants have defended Plaintiff's claim for home modification without reasonable grounds. Despite having actual or constructive knowledge of Plaintiff's need for home modifications, Defendants have failed to provide these modifications. Further, Defendants requested that Plaintiff move from her home to Eden Gardens on August 4, 2008 so that these *Page 11 
home modifications could be completed which they anticipated would take three months. The first modification has yet to be performed. Defendants have obtained two experts who recommended that an elevator be installed in Plaintiff's home as part of the home modifications but defendants have ignored their own experts.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident on or about February 16, 2005. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25. Such medical treatment includes attendant care provided by Plaintiff's husband, a CNA, or LPN. Id.; Ruiz v. Belk Masonry Co., Inc.,148 N.C. App. 675, 559 S.E.2d 249 (2002).
3. Plaintiff is entitled to compensation for attendant care services by her husband Monday through Friday for up to five hours per day from May 23, 2006 through March 11, 2007 and from July 24, 2008 through August 3, 2008 at a rate of $13.00 per hour. Id.
4. When Plaintiff returns home following the modifications to her residence, Plaintiff is entitled to have defendants pay for attendant care services for 24 hours per day for a CNA at the prevailing market rate at that time for services rendered. Of the 24 hours of attendant care, Plaintiff is entitled to have Defendants pay Plaintiff's husband, Mr. Yuckel for *Page 12 
ten hours of attendant care at the rate of $13.00 per hour. Services provided by Mr. Yuckel and the CNA shall not overlap. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to have defendants pay for home modifications to Plaintiff's residence to be performed immediately by or at the direction of Corey Staver. Timmons v. N.C. Dept. ofTransportation, 123 N.C. App. 456, 473 S.E.2d 356 (1996),aff'd per curiam, 346 N.C. 173, 484 S.E.2d 551 (1997).
6. Plaintiff is entitled to have defendants authorize and pay for a smaller electric wheelchair as prescribed by Dr. Pociask on September 10, 2008. N.C. Gen. Stat. § 97-25.
7. As defendants have defended this claim without reasonable grounds, the entire cost of the proceedings including reasonable attorney fees for Plaintiff's counsel are charged to defendants. N.C. Gen. Stat. § 97-88.1
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Defendants shall pay to Plaintiff's husband, Mr. Yuckel, compensation for attendant care services rendered Monday through Friday for up to five hours per day from May 23, 2006 through March 11, 2007 and from July 24, 2008 through August 3, 2008 at a rate of $13.00 per hour.
2. Corey Staver is hereby authorized to make all home modifications recommended and Defendants shall pay for the same either as they are completed or as otherwise agreed.
3. Defendants shall immediately provide a smaller electric wheelchair as prescribed by Dr. Pociask and pay for the same. *Page 13 
4. When Plaintiff returns home following the modifications to her residence, defendants shall pay attendant care services for 24 hours per day. Compensation is to be paid to Mr. Yuckel for attendant care services at a rate of $13.00 per hour for no more than ten hours per day and to a CNA for the remaining 14 hours at the prevailing market rate at that time for services rendered. Services provided by Mr. Yuckel and the CNA shall not overlap.
5. Defendants shall pay a reasonable attorney's fees to Plaintiff's counsel in the amount of 25% of all compensation awarded to Plaintiff for attendant care services provided. This amount shall be added as a part of the cost of this matter and shall not be deducted from the amount due Plaintiff.
6. Defendants shall pay the costs of this action.
This the 23rd day of February 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1